HARRY STEGALL, Defendant in Error, v. AMERI-CAN PIGMENT & CHEMICAL COMPANY, Plaintiff in Error.

St. Louis Court of Appeals. Argued· and Submitted March 8, 1910. Opinion Filed June 28, 1910.

1. JUSTICES' COURTS: Service of Process: Special Constables: Required to Make Return. Section 3864, Revised Statutes 1899, which requires every constable, as well as "every other person" serving any process authorized by the article in which said section is contained to make return thereof in writing as to the time and manner of service, applies to a special constable empowered to execute process by virtue of section 3863, as well as to the regular constable or his deputy.

2. ———: ———: ———: Penalty for Failure to Execute Process: Statute Not Applicable to Special Constables. Section 3865, Revised Statutes 1899, which imposes a penalty for failing to execute any process and make due returns thereof, is limited to the constable and his regularly appointed deputy, and does not extend to a private person appointed as a special officer to execute process by virtue of section 3863.

3. ———: ———: Constables. When the regularly elected or appointed constable or his deputy serves process, he does it

Stegall v. Pigment & Chemical Co.

under the obligation of his oath of office and, so far as the constable is concerned, under the obligation of his bond, he likewise being responsible under his bond for acts of misfeasance, neglect of duty or oppression in office of his deputy.

4. ———: ———: **Special Constable Agent of Party for Whom He Acts.** A private person, appointed under section 3863, Revised Statutes 1899 to serve process, is not regarded as an officer of the law, but as the agent, the representative *pro hac vice*, of the party at whose instance and risk he is appointed.

5. **JUDGMENTS: Collateral Attack: Justices' Courts: False Return of Special Constable: Suit in Equity Will Lie.** A judgment resting on the service of process by a person appointed under the provisions of section 3863, Revised Statutes 1899, is open to attack by a suit in equity for a false return made by such person, plaintiff being chargeable with whatever fraud, false statment, or misstatement his agent, the special constable, may have made.

6. **JUSTICES' COURTS: Service of Process: Special Constable: Appeal to Circuit Court: Motion to Quash Return.** Where, under section 3863, Revised Statutes 1899, a justice of the peace appoints a person to execute process, on appeal to the circuit court, the return of such person is not conclusive, but is open to attack by a motion to quash, and on the hearing of the motion the return is merely prima facie evidence of the facts of service therein set out.

7. ———: ———: ———: **Return May be Amended.** Where a private person is deputized by a justice of the peace to serve process, under section 3863, Revised Statutes 1899, his return is subject to amendment to show the facts, both before and after trial.

8. ———: ———: **Foreign Corporation: Sufficiency of Return.** Where, under section 3862, Revised Statutes 1899, service of process is had on a foreign corporation, all that is required of the officer or person making the return is, that he state that the corporation defendant has no office or place of business in Missouri and that the process was served on any agent or employee in any county or city where such service could be obtained, it not being necessary to state that defendant is a foreign corporation.

9. ———: ———: ———: ———. In an action commenced in a justice's court against a foreign corporation, the return of service of a summons reciting that it was served in the city of St. Louis, Mo., July 14, 1908, "by delivering a true copy personally to Diekmann, president of the named defendant corporation, The American Pigment & Chemical Company (a corporation), such defendant corporation, the American Pigment &

Chemical Company, having no business office in St. Louis at the time of service," sufficiently showed service on Diekmann "as president" of the corporation, and sufficiently showed that the corporation had no office or place of business within the state, and that it was served on the agent or employee within the city and state, as authorized by section 3862, Revised Statutes 1899.

10. ———: ———: ———: ———: **Effect of Amending Return.** In such a case, the service on the president of the defendant corporation was sufficient to bring the defendant into court, and the fact that the return was amended, or even abandoned by reason of amendments, does not overcome the fact that it accomplished its purpose of lawfully bringing defendant into court.

11. ———: ———: ———: **Service by Special Constable: Defects Reached by Motion to Quash Return.** In such a case, the return would be subject to attack by a motion to quash, if the process had not been served on the person named as president, or if he was not president at the time, or if the defendant had an office in the city of St. Louis, or no office at the time of service; and it would be open to defendant to show that none of these facts was true, but that is all a motion to quash could properly reach.

12. ———: ———: ———: **Questioning Jurisdiction: Plea in Abatement.** A plea in abatement, and not a motion to quash a return of service of process, is the proper pleading to raise the question that a foreign corporation, on which service of process is had pursuant to section 3862, Revised Statutes 1899, does not transact any business in this state and therefore is not subject to the jurisdiction of the courts of this state.

13. **PLEADING: Joining Plea In Abatement with Plea to Merits.** A plea in abatement that a defendant corporation did no business in Missouri and was not therefore subject to suit in her courts, may be joined with a plea to the merits, without waiving the matter in abatement.

14. **JUSTICES' COURTS: Service of Process: Foreign Corporations: Definition of Term "Office."** The term "office" as employed in section 3862, Revised Statutes 1899, authorizing service on foreign corporations having no office or place of business in Missouri, by service on any agent or employee in any county or city where such service may be obtained, means an established office, that is to say, a regular office and not a mere casual place of meeting, and hence a return of service on such a corporation is not objectionable in that it recited that the corporation had no "regular office" or place of business within the state.

15. ———: ———: **Return of Constable Not Closely Scrutinized.** Returns of constables and private persons deputized to serve process by justices of the peace are not to be scrutinized with the technicality that is indulged in testing the return of sheriffs and higher officers.

16. **FOREIGN CORPORATIONS: Doing Business Within State.** Where a foreign corporation, organized by residents of this state, owned a manufacturing plant in another state, and the directors' meetings were held in this state prior to two months before the institution of suit, and all its books were kept in this state, and it kept its bank account and drew checks for the payment of money in this state, and had papers and accounts in a deposit box in this state, which was rented and used by it down to the time of the trial, it was transacting business in this state and was liable to be served as such by service upon any of its officers.

17. ———: ———: **Subject to Suit: Policy of Law.** It is not within the spirit of our law to allow business of a foreign corporation to be done in this state, debts contracted and services performed, and then allow it to shift out of the jurisdiction of the courts of this state, leaving debts here contracted unpaid and their establishment in our courts impossible.

Error to St. Louis City Circuit Court.—*Hon. George H. Hitchcock,* Judge.

AFFIRMED.

*H. W. Femmer* for plaintiff in error.

(1) The court erred in overruling the motion to quash the original return of the special constable to the alias summons, as it was the only return then properly before the court, and was insufficient on its face to confer jurisdiction. This return is so palpably insufficient no citation of authorities is necessary to show that there is no compliance with sec. 3862, R. S. 1899. (2) The court erred in overruling the motion to quash what purports to be the first amended return, being the return that was found attached to the justice's transcript when it reached the circuit court, for the reasons following: (a) Because there was no authority for the amend-

ment; it was not made in compliance with sec. 3952, R. S. 1899. (b) Because it appears on its face to have been made after the case was appealed and after the justice had lost jurisdiction. Sullivan v. Sanders, 9 Mo. App. 75. (c) Because it was insufficient on its face to confer jurisdiction, in that it was not in compliance with the requirements of sec. 3862, R. S. 1899. Zelnicker v. Cotton Oil Co., 103 Mo. App. 97; Newcomb v. Railroad, 182 Mo. 687. (3) The court erred in permitting the special constable to amend the second return found with the papers coming from the justice, wherein the special constable was allowed to insert the date of service, on the ground that this return never had any validity, and an amendment interlining the date could not cure the other radical defects to this return disclosed by the record and appearing on the face of the return (See authorities cited in support of point 2.) (4) The court erred in permitting the special constable to file his third amended return for the following reason: Because at the time leave was granted to file this return the court had before it the testimony on the former motion to quash, which showed conclusively that the defendant company never had done any business in the State of Missouri within the meaning of the statute. (5) The court erred in overruling the motion to quash the third amended return, because the return is insufficient on its face to confer jurisdiction. Zelnicker v. Cotton Oil Co., 103 Mo. App. 94; Newcomb v. Railroad, 182 Mo. 687. (6) The court erred in holding as a matter of law the return of a special constable is as binding on all parties as if made by a regularly qualified and bonded constable. Realty Co. v. Armour Packing Co., 112 Mo. App. 270. (7) The court erred in overruling the motions to quash the returns, because if the court found that the American Pigment & Chemical Company was doing business in the State of Missouri within the meaning of the law, then it must also have found that what business they

did in this state was done at the office of the Union
Biscuit Company, which, for the purpose of such busi-
ness, was the office of the defendant, and in so finding
the court must also have found that the returns of the
special constable were not in compliance with the re-
quirements of sec. 3862, and especially not in compli-
ance with that part of sec. 3862, directing how service
shall be made on foreign corporations having an office in
this state. Sec. 3862, R. S. 1899. (8) The court erred in
holding that the defendant was doing business in the
State of Missouri within the meaning of the statute.
Bank v. Lapeer, 121 Mo. App. 688; St. Clair v. Cox, 106
U. S. 350; Goldey v. News Co., 156 U. S. 518; Fitzgerald
v. Fitzgerald, 156 U. S. 518; King v. Sullivan, 13 Ga.
621; Cook v. Girard, 87 Md. 138; Eureka v. Ins. Co., 62
Pac. 398; Phillips v. Library Co., 141 Pa. St. 463; Wat-
kins v. Elliott, 62 Pac. 1004; Bradbury v. Waukeegan,
113 Ill. App. 607; Ladd v. Coal & Mining Co., 160 Mo.
436; City v. Hogan, 176 Mo. 157. (9) The court erred in
holding that the defendant waived the question of jur-
isdiction by prosecuting an appeal from the justice
court to the circuit court.    Bente v. Typewriter Co.,
116 Mo. App. 77; State ex rel. v. Ayers, 116 Mo. App.
92; Meyers v. Insurance Co., 184 Mo. 481.

*Jamison & Thomas* for defendant in error.

(1)   A constable or special constable may be per-
mitted to amend his return after a cause is appealed
to the circuit court and the court of appeals may re-
mand a case in order to permit the constable to amend
his return, if it thinks necessary.    Trousier v. Rail-
road, 54 Mo. 189; Boulware v. Railroad, 79 Mo. 494;
Todd v. Railroad, 33 Mo. App. 110; Brect v. Corby,
7 Mo. App. 305.    (2)   The return of a constable or spe-
cial constable is conclusive as to all matters properly
included in said return.    Heath v. Railroad, 83 Mo.
617.   (3)   One appointed under the statute to act as

a special constable, possesses all the power and authority of a constable in relation to the execution of process, and is subject to the same obligations; nor is a docket entry necessary to empower such person to serve a summons under the statute. R. S. 1899, sec. 3863; Houck v. Swartz, 25 Mo. App. 17; Cookey v. Railroad, 17 Mo. App. 132; Powers v. Braley, 41 Mo. App. 562. (4) The return of an officer upon the process should receive a reasonable and natural construction so as to give effect to its plain intent and meaning, and such part of the return as is not necessary to its validity should be considered as surplusage, and such return is conclusive as to all matters properly contained therein. Realty Co. v. Packing Co., 112 Mo. App. 271; State ex rel. v. Still, 11 Mo. App. 283; Howard v. Still, 14 Mo. App. 583; State v. Watson, 141 Mo. 383; Newcomb v. Railroad, 182 Mo. 687; Davis v. Railroad, 126 Mo. 69. (5) A foreign corporation may be sued in the courts of this state and a personal judgment secured against it if it is served with process as is required by statute, where such corporation has no office or place or business within this state. R. S. 1899, secs. 3862, 3863; McNichols v. Mercantile Rep. Co., 74 Mo. 457; Supply Co. v. Cotton Oil Co., 103 Mo. App. 94; St. Louis v. Ferry Co., 40 Mo. 580; R. S. 1899, sec. 570; Bank v. Mfg. Co., 55 Ga. 36. (6) If a corporation within a foreign state receives the services of or a benefit from a resident of that state, or if it should make a contract within that state with one of its citizens, it thereby submits itself to the jurisdiction of that state and subject to suit for such services or on such contracts, even though said corporation has no regular office or place of business within said state. Condensed Milk Co. v. Brandenberger, 40 N. J. Law 111; Moulin v. Insurance Co., 25 N. J. Law 57; Smith v. Milk Co., 24 N. Y. Sup. 79; Spencer v. Rogers L. & M. Co., 21 N. Y. Sup. 612; Life Ins. Co. v. Realty Co., 41 Barb. (N. Y.) 9; Way-

muth v. Railroad, 1 MacArthur (D. C.) 19. (7) A foreign corporation is deemed to be doing business within a state other than that by which it was created, whenever it does within the borders of such foreign state those acts for which it was incorporated, or acts which are incidental thereto, or which are necessary to the proper conduct of its business. Price v. Life Ins. Co., 3 Mo. App. 262; Amusement Co. v. Amusement Co., 192 Mo. 404; Mill Co. v. Sims, 101 Mo. App. 569; Erhardt v. Roberts & Bro., 78 Mo. App. 404; Fruit Co. v. McKinney, 103 Mo. App. 304; Iron Works v. Mining Co., 15 Colo. 499; Gray v. Pulley Works, 16 Fed. Rep. 436; Mfg. Co. v. Demming, 20 Fed. Rep. 795; Peters v. Neeley, 84 Tenn. (16 Lea.) 275; Smith v. Ins. Co., 35 Howard's Prac. (N. Y.) 126. (8) Appeal upon the merits of a case from the justice to the circuit court by the defendant waives all objections to the jurisdiction of the person of said defendant. Hill v. Wilson Mfg. Co., 4 Mo. App. 595; Grain Co. v. Mackler, 88 Mo. App. 186; Boulware v. Railroad, 79 Mo. 494.

STATEMENT.—On June 27, 1908, defendant in error, plaintiff below, filed with the justice of the peace of the Fifth Judicial District of the city of St. Louis, a statement of an account for services alleged to have been rendered the American Pigment & Chemical Company, plaintiff in error, defendant below. The account or statement filed with the justice claimed $230 "for clerical services rendered in keeping books of said company for eleven and a half months, beginning May 1, 1907, and ending April 15, 1908, at $20 per month, as per contract of Harry W. Stegall with the American Pigment & Chemical Company." Summons was issued on this to the constable of the district, returnable July 13th. It was returned by the constable, endorsed by his deputy, "not found." On July 14th an alias summons was issued by the justice, running in the name of the State of Missouri, directed "to special constable

A. H. Watson, city of St. Louis," and was returnable
July 24th. On the back of this summons the justice
of the peace endorsed and signed a notation that "at
the risk and request of plaintiff, I hereby authorize A.
H. Watson to execute and return this writ." From the
time this alias summons was placed in the hands of this
special constable until the termination of the case in the
circuit court, four returns were made on it by this spe-
cial constable, all of them sworn to by this special con-
stable. The first return was sworn to on the 16th of
July; the second on the 4th of August; what is called
the third return is the same amended by inserting the
date of service, and the fourth return was sworn to by
the special constable on the 30th of November, 1908.
For a correct understanding of the points involved here,
it is necessary to set these out and they are here in
numerical order as above referred to, omitting the ju-
rats:

"First:   The return before the justice at the time
of the trial of the case on July 24, 1908.

"Served the within summons in the city of St.
Louis, Mo., this 14th day of July, 1908, by delivering
a true copy of the same personally to Frank J. Diek-
mann, president of the within named defendant corpora-
tion, the American Pigment & Chemical Company (a
corporation), said defendant corporation, American
Pigment & Chemical Company, having no business of-
fice in St. Louis at time of service.
                    "(Signed) A. H. WATSON,
                              "Special Constable."

"Second:  The return found appended to the pa-
pers from the justice's office when the transcript reached
the circuit court:

"July —, 1908, I served the within summons upon
defendant, American Pigment & Chemical Company,

a corporation, by this day delivering in the city of St. Louis, Missouri, a true copy thereof to Frank J. Diekmann, president of said corporation, said corporation being organized under the laws of the State of Arizona, and doing business in the State of Missouri, but having *no regular office or place of business in the State of Missouri*, the said Frank J. Diekmann being then and there president and officer of said corporation and residing in the city of St. Louis, Missouri.

"(Signed) A. H. WATSON."

"Third: When amended by interlining the date, the return then read as follows:

"July 14, 1908, I served the within summons upon the defendant, the American Pigment & Chemical Company, a corporation, by delivering in the city of St. Louis, Missouri, a true copy thereof to Frank J. Diekmann, president of said corporation, said corporation being organized under the laws of the State of Arizona and doing business in the State of Missouri, but having *no regular office or place of business in the State of Missouri*, the said Frank J. Diekmann being then and there the president and officer of said corporation and residing in the city of St. Louis, Missouri.

"(Signed) A. H. WATSON."

"Fourth: The return which the court permitted the special constable to file after hearing the evidence on the motion to quash:

"State of Missouri, City of St. Louis, ss.

"A. H. Watson, being first duly sworn, on his oath states that on July 14, 1908, he served the within alias summons in the city of St. Louis, Missouri, upon the defendant, the American Pigment & Chemical Company, a corporation, by then and there delivering a true copy thereof to Frank J. Diekmann, president of said cor-

poration, the said corporation having been organized under the laws of the State of Arizona, and then and there doing business in the State of Missouri, but having *no regular office or place of business within the State of Missouri,* the said Frank J. Diekmann being then and there president and officer and agent of said corporation and residing in the city of St. Louis, Missouri.

"(Signed) A. H. WATSON,

"Special Constable."

On the return day of the summons, that is to say, July 24, 1908, defendant filed its motion to quash the return of the special constable, stating in its motion that it appeared for the purpose only of filing the motion, and challenged the first return for the reason that it simply shows that the service was obtained on defendant by serving the summons in the city of St. Louis, on the 14th of July, by delivering a true copy of the same personally to Frank J. Diekmann, president of the within named defendant, American Pigment & Chemical Company, a corporation. The second ground for the motion is that the defendant is and was at the time of service a corporation, organized under the laws of the State of Arizona, and that it was not at said time doing business in this state, nor had it a place of business, office or agency in this state. According to the transcript of the justice, when this motion to quash the return was taken up and heard by the justice on the return day thereof, that is to say July 24th, it was overruled and the transcript recites that "the evidence being submitted and concluded, the justice finds for plaintiff and against defendant, American Pigment & Chemical Company, a corporation, in the sum of $230," and entered judgment accordingly. This is followed by the notation in the transcript, that execution was issued to the constable of the district on July 24, 1908. On August 1st, defendant, by its agent, filed affidavit and bond for an appeal. The bond was approved and

an appeal granted to the circuit court. In the affidavit
for appeal, in addition to the averment that the appeal
is not made for vexation or delay but because affiant
believes appellant is injured by the verdict of the jury
and the judgment of the justice, is the statement "and
that this appeal is from the merits." Along with the
transcript appears the second return of the constable,
sworn to August 4, 1908, and this appears above the
signature of the justice: That the foregoing is a full,
true and complete transcript of the proceedings in the
case named as they are of record on his docket, "and
that the papers thereto attached are all the original
papers belonging to said case, now on file in my office."
This is dated August 1, 1908, and signed by the jus-
tice. It will be noted that the second return of the
special constable was sworn to the 4th of August, 1908.
There are no file marks on this as it is in the tran-
script or abstract, however, to show when it was filed
with the justice. On the 5th of November, the case hav-
ing reached the circuit court on appeal, it appears from
the abstract of the record in the case that on motion of
special constable, by attorney, it was ordered by the
court that he be granted leave to amend his return
by interlineation, by inserting the day of the month
on which he served the summons of the justice, on the
first line of the amended return. It was accordingly
amended and as amended is what we have designated
as the third return. It does not appear to have been
sworn to again after being thus amended. On the 24th
of November notice of appeal in usual form was duly
filed in the circuit court, it having been served on the
attorneys for the plaintiff on the 5th of August. On
the 25th of November the cause was called for trial and
the parties appeared, the defendant appearing specially
and solely for the purposes of questioning the jurisdic-
tion of the court and not for any other purpose, and
renewed its motion to quash, theretofore filed before
the justice of the peace. The court proceeded to try

the case on this motion to quash, the defendant assuming the burthen of sustaining its motion. Introducing as a witness its secretary, Mr. Armbruster, he testified that he resided in St. Louis and is the secretary and treasurer of the defendant and held the same position at the time the case was tried before the justice; that the defendant is an Arizona corporation. Asked what he did as secretary and treasurer of the defendant company in the city of St. Louis, he testified that he would bring some bills down from the plant situated near Alton, Illinois; would bring the bills down here and make out bills and vouchers; take the bills and checks around to the vice-president for his counter-signature; mail checks here or sometimes at East St. Louis or sometimes sent them up to Alton, whichever was most convenient. Asked if the company had done any kind of work in the city of St. Louis, he said, "No," that the corporation was formed for and at the present time is engaged in manufacturing pigments and a by-product called sodium sulphide at its plant in Illinois and was so engaged at the time of the service of summons in the case; had never carried on any business in the city of St. Louis; had no office in the city of St. Louis at the time service was had in this case. Asked if the company ever had an office in the city, he answered that he would not presume to say as to that, although he considered the company was using his office temporarily for the purpose of incorporation, which occurred in February, 1906 (sic), but that since that time the company had never had an office in this city and had no authority to transact business in this state. This latter was objected to and objection sustained. Witness further stated that outside of the matters and things he has already stated, the company had never done any work of any kind in the State of Missouri. On cross-examination he stated that the company was organized in January, 1906 (should be 1907), by three gentlemen and himself, all of whom but one lived in St. Louis.

The first meeting of the board of directors was held in witness' office in the Wainwright building in the city of St. Louis. It occupied that office until about the end of February, when witness vacated it and went to work at the plant. The company vacated it at the same time he did. Shown a paper headed "Second meeting of the board of directors," of defendant, held at 215 Wainwright building, St. Louis, dated February 13, 1907, he stated that that meeting was held at his office in St. Louis. He identified a memorandum of proceedings of that meeting which memorandum he said had been prepared by him and signed by all of the board of directors. Among other entries in this memorandum to which his attention was called, was one to the effect that as the secretary would be required to give almost his entire time to the plant from and after March 1, 1907, and as the rental of the office in the Wainwright building expired on the 28th of February, it was considered best for the company to vacate the office. This resolution, he said, was adopted. He also identified as part of the proceedings of that meeting an entry in this memorandum, to the effect that the documents and valuable papers of the company be kept in a safe deposit box at the Mercantile Trust Company, city of St. Louis, subject to withdrawal at any time by two officers of the company. Witness stated that the larger number of meetings were held in St. Louis up to April, 1908, when a new board was elected at a meeting in St. Louis. Up to April 17, 1908, or about that time, the valuable papers of the company were kept in safe deposit boxes at the Mercantile Trust Company. All the members of the board of directors and all the officers of the company lived in St. Louis, and a great many meetings of the board were held at the office of Mr. Kern, which was also the office of the Union Biscuit Company, in the city of St. Louis prior to April, 1908; after that date no directors' meetings were held in St. Louis. The services rendered by the

plaintiff Stegall were rendered here in St. Louis. He was doing some work for Mr. Kern, who was one of the directors, but not for the defendant; was keeping some records for Mr. Kern. The bank account of the company was kept in St. Louis until the latter part of July, 1908. The company has no bank account here now. Witness further testified that he had been the secretary of the company since the incorporation and had had a number of books in his possession; had a stock certificate book and a stock record book; kept the cash book and the vouchers, which are made out here in St. Louis, and Mr. Kern kept a duplicate of the cash book at the office of the Biscuit Company here in St. Louis, of which latter concern he is manager. Witness further testified that he kept a check book at his residence in this city; some of the checks were drawn in St. Louis but not all of them; thinks the checks were all dated St. Louis, Missouri; a great many of the minutes were written up in Illinois. Witness had them typewritten there and would bring them down to St. Louis the next day; some of them were signed here in St. Louis where the officers and directors lived; kept a stock certificate book at home in this city where he has entered transfers of stock. The company did not take orders for goods in St. Louis; had sent some samples down here which were paid for; never made a sale of any goods to the purchaser in St. Louis and no officer connected with the company ever did. At the time the summons was served in this case, on July 17th, Mr. Diekmann was president of the defendant company; he then lived here in St. Louis and still lives here. On redirect examination this witness repeated that their company had no office here. Defendant offered in evidence a certified copy of its articles of incorporation which are set out in full in the transcript on file but it is not necessary to notice them here. This was all the testimony offered by defendant below, plaintiff in error, in support of its motion to quash the return. On his part,

plaintiff below, defendant in error, introduced as a witness Charles Kern, who testified that he lived in the city of St. Louis, was the manager of the Union Biscuit Company, and from February, 1906, to April, 1908, was treasurer of the defendant company. Asked what, as treasurer of the defendant company, he did in the city of St. Louis, he answered that he received all the money for the stock; money came by mail; sometimes was transferred to him by other officers and was received by him at his office at the Union Biscuit Company; kept a cash book for the defendant company in St. Louis; receipted for the money. The stock was issued by Mr. Armbruster, the secretary, and was issued from his home in this city, as witness thinks, but doesn't know; had never seen any stock signed; got his certificate from the secretary, Armbruster; it was delivered to him in St. Louis. The board of directors of defendant company held their meetings every month; most of the meetings were held in the witness' office, that being the office of the Union Biscuit Company in St. Louis. Asked if he knew where the company's office was during the time concerning which he was interrogated and since July, 1907, or since the summons was issued, witness answered, "The office—we did not have any office, only my office up there." He further testified that the company had a little office at East Alton for the superintendent; it has a factory there; had no office in the city of St. Louis except witness' office, where they came and had meetings; the meetings were held there because it was too far to go up to the plant. When the company was first organized it held its meetings in the Wainwright building; about two months after its organization the company left that office; no rent was paid for the use of witness' office by the company defendant to hold its meetings there; thinks most of the meetings of the board of directors, after they left the Wainwright building, were held in witness' office in St. Louis, possibly one-third of them were held at the plant.

The abstract furnished by the plaintiff in error ends
here with the testimony of this witness, but in a supple-
mental abstract furnished by counsel for defendant in
error and which is not challenged, it is set out that
after the testimony of Mr. Kern had been taken, plaintiff
below, defendant in error, was put on the stand. This
is corroborated by an examination of the transcript.
Plaintiff below testified, as a witness in his own behalf,
that he was secretary and treasurer of the Union Bis-
cuit Company and knew that a number of meetings of
the board of directors of the defendant company were
held in St. Louis; that he (witness) kept all the cash
records for the company in St. Louis; that the com-
pany drew checks in St. Louis on a St. Louis bank
and he (witness) received a few small checks for sales
made by the company in St. Louis; that said actions
of the company were done with the knowledge of Mr.
Peters, who was then its president; that the moneys
of the company were received by Mr. Kern, its treas-
urer, and turned over to witness and that he made the
entries in the cash books, endorsed the checks and de-
posited them at the Mercantile Trust Company and is-
sued receipts for stock paid for in the company, all of
which was done in the city of St. Louis. This was
all the evidence introduced under this motion to quash.
Thereafter, on the 30th of November, plaintiff below,
defendant in error, filed a motion for leave to amend
the return of the special constable. This motion was
signed by the attorneys for the plaintiff below and veri-
fied by one of them and on the 3rd of December, plain-
tiff below, defendant in error, was granted leave to at-
tach the amended return of Watson, as special consta-
ble, to the alias summons. Whereupon the amended
return marked "Fourth" in the foregoing statement,
duly verified by Mr. Watson, was filed and attached to
the summons. It is stated in the abstract furnished by
the plaintiff in error that defendant below, plaintiff in
error, duly excepted at the time to the action of the

court in granting plaintiff leave to amend the special constable's return. This statement is challenged in the supplemental abstract filed by counsel for plaintiff below, defendant in error, they stating that the record does not show that any exception was saved by the defendant to the action of the court in granting plaintiff leave to amend the special constable's return as stated by counsel for plaintiff in error. A reference to the full transcript, which is on file, sustains counsel for defendant in error in this claim. An examination of that transcript, at page 61, fails to show any exception saved to the action of the court in allowing this fourth amended return to be made and filed, the entry in the transcript of the record, following the motion for leave to amend and the amended return and the jurat thereto being under date of the 3d of December, 1908, and the next entry appearing in the transcript of the record being dated the 17th of December, during the December, 1908, term of the court, the entry then being an order overruling the motion to quash this fourth return. No intervening entry of any exception appears. Resuming the consideration of the abstract of the record, it appears that on this 17th of December, the court having considered defendant's motion to quash service filed with the justice and overruled by him July 24, 1908, and renewed in the circuit court, overruled it. Plaintiff in error duly excepted to this action. It appears by the transcript as follows, following the exception to the action of the court last above noted: "That thereupon and contemporaneous with the overruling of the motion to quash the court decided the case on its merits and rendered judgment in favor of plaintiff and against the defendant in words and figures as follows:" Here follows, of date December 17th, the finding by the court that the defendant is indebted to the plaintiff in the sum of $230 with interest, and judgment is accordingly entered for $235.86 and costs. Within four days after the rendition of the judgment and during the same

term defendant filed its motion in arrest, it appearing, as it states in the motion, especially for the purpose of that motion. The grounds of the motion are that the defendant, a corporation of the state (sic) of Arizona, having its principal place of business in Alton, Ill., is not now and at no time heretofore has ever done business in the State of Missouri; that the special constable who served the summons was not duly authorized thereto by law; that the first return made by the special constable shows on its face that the service was not made as required by law and the motion to quash should have been sustained; fourth, that the motion to quash the original return should have been sustained because plaintiff by his action in asking leave to amend admits that the original service was defective; fifth, that the court erred in permitting plaintiff to file his amended return because the evidence in the case showed that defendant was a foreign corporation and never had done any business whatever in the State of Missouri, and that the service was on Diekmann, the president, personally, and not on him as president of the company, because the corpus was never in the State of Missouri and Diekmann's official capacity as president of the company did not follow him into the State of Missouri and service on him was not service on the company; sixth, that the court heard the defendant on its motion to quash (the defendant appearing especially for that purpose only) and took the motion to quash under advisement, and while the motion to quash was under advisement and no decision had been rendered thereon, the court proceeded to try the case; seventh, that the judgment for plaintiff on the merits of the case was rendered simultaneously with the overruling of the motion to quash and as no time whatever intervened between the overruling of the motion to quash and the rendition of the judgment, defendant was not afforded an opportunity to enter its appearance and plead to the merits of the case, had it elected to do so after its motion to

quash was overrruled; eighth, that the court having found defendant was doing business in the State of Missouri must also have found that whatever business it did in the state was at the office of the Union Biscuit Company and that for the purpose of such business the office of that company had been adopted and used by the defendant as its principal place of business in the State of Missouri, and service of summons should have been made in accordance with section 3862, Revised Statutes of 1899, and the amended return as filed on December 3d, thus became defective service; ninth, the original return made by the special constable was defective on its face and should have been quashed; tenth, that if the amended return filed on December 3d is permitted to stand and defendant is bound by the recitals therein, it would be bound as is in the case of return by regular officers, then the defendant is deprived of any remedy against the special constable because the recitals in the amended return are manifestly false and as the special constable has given no bond and is wholly insolvent, a suit against him for making the false return would avail the defendant nothing; eleventh, that there appears in the transcript filed by the justice three separate and distinct returns, the original return being defective, and the amended return not made in accordance with law; twelfth, that the motion to amend the return which was sustained by the court was not made by the special constable or by any one appearing for him, but by plaintiff himself by his attorney; thirteenth, that the amended return filed in this cause by leave of the court appears to be verified by the affidavit of the special constable and is in truth and fact merely an affidavit made in the case by A. H. Watson and should not be binding on the defendant, but he should be permitted to question the same and it should have no greater weight than any other ex parte affidavit filed in the case. The court overruled this motion on the 24th of December, defendant duly saving its exception. After-

Stegall v. Pigment & Chemical Co.

wards on January 2,1909, as appears by the transcript in the case and during this December term the entry of submission of the case on its merits was set aside and on motion of counsel for plaintiff below it was ordered by the court that "judgment entered herein on December 17th, 1908," be set aside and the entry of submission of the cause entered of record on November 25 (sic), 1908, be set aside and the cause placed upon the docket of the court for trial on the 5th of January. During this December term defendant below filed its motion to quash the return which motion is based upon practically the same grounds as those set out in the motion in arrest. Afterwards on the 14th of January the court proceeded to hear the testimony in support of defendant's motion to quash. Objection was made to any testimony by counsel for plaintiff below, defendant in error, for the reason that under the laws of the state the return of the constable being correct on its face is conclusive as to the fact therein stated and oral testimony attempting to contradict the return is inadmissible. The objection was overruled. Thereupon testimony was heard by the court, that on the part of defendant below, plaintiff in error, being the testimony of Mr. Armbruster, secretary and treasurer of the defendant, which was practically the same as that given at the other hearing. He repeated that the company had never transacted any of its manufacturing business, to carry on which it was organized, that is to say the manufacture of carbonate of barium and other chemical compounds, in the city of St. Louis; had never carried on any other kind of work except as before stated to the court; closed their bank account in the city about the time of this trial. On cross-examination his testimony was practically the same as before, adding that Mr. Kern was the treasurer up to April, 1908, and that Mr. Stegall, the plaintiff, had assisted him in keeping the duplicate of the cash book; that was done here in St. Louis. Witness, Armbruster, as secretary, kept the other cash book. A. H. Watson, pro-

duced and examined on the part of defendant, testified that he was doing business as the "Watson Law Reporting and Process Serving Company;" that the returns on the back of the summons in this case were made by him. The interlineation in his return shown him but not identified in the abstract but following the word "corporation," he testified, was in his handwriting; he had not personally asked leave of the court to make this amendment; had made the return of date July 17. Asked if he received permission to make that return, stated that he was informed that he did; had not personally made a motion to amend it nor instructed any one to do it; had made the return dated December 3d, which was pasted on the face of the alias summons, dated July 14th; had not petitioned the court for leave to make that amendment. Asked if he knew the location of the office of the defendant company, he said he did not; did not know what business they carried on. Of his own knowledge doesn't know whether they carried on any business in the State of Missouri.

Mr. Kern was called as a witness by the defendant and testified practically as he had in the previous hearing, adding that during the time he was treasurer of the defendant company that plaintiff Stegall kept the books and records for him as treasurer. The books were kept at witness' office, which was also the office of the Union Biscuit Company, in St. Louis. The other officers of the company knew these books were being kept there; they also knew that Stegall was doing this work; that at the directors' meetings which were held in his office, the board considered all matters relating to the company. The company was building the plant at that time and the board considered everything that came up concerning the building of the plant. On cross-examination he repeated that the board of defendant company had held its meetings at his office in the city of St. Louis up to April, 1908; after that there were no meetings whatever held by the board of directors in St. Louis and no busi-

ness was transacted at his office for the company after that. The books had been kept in his office in St. Louis before April, 1908. There was a cash book and the receipt book on the stock; received the money here. These books that he kept were duplicate books, the originals were kept by Mr. Armbruster, the secretary; had seen some books up at the plant in Illinois where the payrolls and everything were entered in; never saw any books at Mr. Armbruster's house. After the 15th of April, he said; on redirect examination, that there were no more meetings held in his office in the city of St. Louis; at that time he stopped being the treasurer and was left out of the directorate. This was all the evidence offered in connection with the motion to quash the return of the special constable, it being the motion to quash filed January 5, 1909. On the 20th of January and during the December term the court overruled the motion to quash the returns theretofore filed, plaintiff in error, defendant below, duly excepting. On the 20th of January during said term, the cause being called for trial on the merits, the plaintiff appeared in person but the defendant failing to appear, was adjudged in default. Whereupon the case was submitted to the court on the evidence theretofore adduced, and the court again found in favor of plaintiff in the sum of $237.82 and rendered judgment accordingly. Defendant below appearing specially for the purpose of the motion, moved in arrest, which was practically the same as the one it had previously filed, the additional ground of lack of any evidence to support the return or finding being assigned. This was overruled and exception saved, whereupon defendant duly filing its bill of exceptions, still saving its objection that it appeared specially, and has brought the case here on writ of error.

REYNOLDS, P. J. (after stating the facts).—We have been compelled to make an unusually long state-

ment of a case involving comparatively a small amount and in making it to resort to some extent to the transcript on file as counsel differ as to what is in that transcript; furthermore it was somewhat difficult to understand all of the proceedings in the order in which they occurred without a reference to the transcript. This is not said in criticism of the very full abstracts furnished by counsel on each side but in view of the difference of counsel as to what was in the transcript it is safer for the court to resort to that transcript. While the amount involved is small, the issues are important, and in some respects of first impression.

The first proposition is as to the conclusiveness of the return of a special constable, appointed under the provisions of section 3863, Revised Statutes 1899. That section, as amended by the Act of March 24, 1903 (Session Acts, 1903, p. 212), provides that every justice issuing any process authorized by this article (that is to say, article 3, of chapter 43, of the revision of 1899) upon being satisfied that process will not be executed for want of an officer to be had in time to execute the same, or in all cases where the constable is a party to the pending suit, or is otherwise interested in the result thereof, "May empower any suitable person, not being a party to the suit, to execute the same, by endorsement upon such process to the following effect: 'At the request and risk of the plaintiff, I authorize ——— to execute this writ. E. F., justice of the peace.' And the person so empowered shall thereupon possess all the authority of a constable in relation to the execution of such process, and shall be subject to the same obligations, and shall receive the same fees for his services." The changes made in this section, as it had existed ever since 1865 in this state, were in addition of the words "or in all cases where the constable is a party to the pending suit or is otherwise interested in the result thereof," and in the omission after the word "execute" in the endorsement on the writ, of the words "and return" between the

word "execute" and the words "this writ." For the purposes of this case these amendments are not material and we only notice them for accuracy. Following this section is section 3864, which provides that every constable "or other person," serving any process authorized by this article, shall return thereon, in writing, the time and manner of the service, and shall sign his name to such return. Doubtless the provision of this section rendered the word "return" in section 3863, as amended by the Act of 1903, unnecessary. The provision added by the Act of 1903 was made to meet a contingency that had brought the validity of a special constable's appointment into question, the regular constable being at hand, and the case of the want of an officer to be had in time to execute the writ not being met, if the constable happened to be the party against whom the writ was to be directed. It has been held in construing section 3863 that it was not essential to the jurisdiction of the justice that it should appear on his docket entry that he was satisfied that the process would not be executed unless he deputized some person other than the constable to execute it. See Cooksey v. K. C., St. J. & C. B. Ry. Co., 17 Mo. App. 132. While it was held prior to the revision of 1865 that the private person appointed as a special constable could serve writs of attachment, garnishment, replevin and the like, it has been held ever since the revision of 1865, that the justice cannot empower a private person to execute any final process or any process other than that covered by this article 3, of chapter 43. See Huff v. Alsup, 64 Mo. 51. It is to be noted that section 3864 requires every constable, as well as "every other person" serving any process authorized by the article to make return thereof in writing as to the time and manner of service, so that this section covers the special constable as well as the regular constable or his deputy. Immediately following is section 3865, the section imposing a penalty for failure to execute any process and make due return there-

of. It is limited to the constable alone, including, of course, the regularly appointed deputy of the constable, and the penalty could not, by any construction, be held to extend to the private person appointed as a special officer for service. This distinction is worthy of attention, as it emphasizes the point that the so-called "special constable" is in no sense an officer, but is in law and in fact the agent of the party to the suit at whose instance, as well as at whose risk, he has been named, with very limited powers, namely, to serve such process as is covered by article 3, of chapter 4, and make return of "the time and manner of service." When the regularly elected or appointed constable or his deputy serves process, they do it, as far as the constable and his deputy are concerned, under the obligation of their oath of office, and as far as the constable is concerned, under the obligation of his bond, he likewise being responsible under his bond for acts of misfeasance or neglect of duty or oppression in the office of his deputy.

In the case of Smoot v. Judd, 184 Mo. 508, 83 S. W. 481, in which case the conclusiveness of the return of an officer is more thoroughly and exhaustively discussed than in any other case relating to the matter which has been before our courts, having the benefit of exhaustive discussion on both sides of the proposition, the principal and prevailing opinion being by Judge MARSHALL, concurred in by all the members of the court except Judge VALLIANT, the latter in an exceedingly able dissenting opinion presenting the opposite side of the question which was then before the court, it is decided that the return of the officer is conclusive, even in a suit in equity brought to set aside a judgment obtained on what was claimed to be a false return by the sheriff. It is there said by Judge MARSHALL (l. c. 518), "Ever since the decision of this court in Hallowell v. Page, 24 Mo. 590, the law has been uniformly declared in this state to be that 'the return of a sheriff on process, regular on its face, and showing the fact and mode of ser-

vice, is conclusive upon the parties to the suit. Its truth
can be controverted only in a direct action against
the sheriff for false return.' " Citing a long list of au-
thorities to this effect from our Supreme Court, Judge
MARSHALL includes among them the case of Bank v. Shu-
man, 79 Mo. 527, where at page 532 it is held that parol
evidence is inadmissible in aid or support of the return
to show service in fact, though not in the manner set
out in the return, and is admissible against the return
only in a suit against the sheriff for false return. While
this case was one on the return of a sheriff, the reason
on which this rule of decision has been sustained and
established has been held equally to apply to returns by
constables and their deputies. That was so in the case
of Heath v. M. K. & T. Ry. Co., 83 Mo. 617, where the
return in question was by a constable, the same law that
has been applied in this state to the returns of the
sheriffs being there, as it is in many other cases, applied
to the returns of constables and their deputies. In the
leading case on the establishing the conclusiveness of a
return, that of Hallowell v. Page, 24 Mo. 590, Judge
SCOTT, who delivered the opinion of the court, placed
the rule on the ground of necessity, that is to say, it "is
one necessary to secure the rights of the parties, and
give validity and effect to the acts of ministerial officers,
leaving the persons injured to their redress by an action
for a false return."

In the case of Heath v. Railway, supra, Mr. Com-
missioner Martin, who wrote the opinion adopted by
the court in that case, stating the rule which estab-
lishes the conclusiveness of a return, which in that case
also was by a constable, and holding that the defend-
ant is estopped by the record, that is to say, by the re-
turn itself, from impeaching its variety, says (l. c. 624),
"The ground upon which this important rule rests is,
that the officer declares in his return that he has done
the things required of him to be done."

In the Smoot case, supra, l. c. 629, Judge Fox, who,

concurred in by Judge GANTT, wrote a separate opinion, concurring, however, with Judge MARSHALL and all the other members of the court except Judge VALLIANT, in discussing the law that the limit of the remedy of a party to his action against the officer is upon his bond, says that in some instances this may entail hardship. It may be said that it is grossly inequitable where the sheriff and his bondsmen are insolvent and unable to respond in damages for the injuries resulting from a false return. But, says Judge FOX, this is no reason for disregarding the return, even in equity. If the officer or his bondsmen are insolvent and unable to respond in damages, the hardship is not the result of the failure of the law to provide a remedy, nor is it the reason for the application of the doctrine that the return of an officer is conclusive. The conclusiveness of the return of the officer is founded upon the fact that due administration of the law and protection of the rights of parties demand that when an officer in the discharge of his duty, does an official act, and it appears that he has done it in accordance with the law, good policy demands that it should be given absolute verity in all cases except where the officer himself is proceeded against for a violation of his official duty. While the action for official dereliction may be against the officer on his bond, and he and his sureties be held responsible under his bond for the damage which his or their wrongful or unlawful act has inflicted, outside of the bond he is liable for false return or any other official act of malfeasance, in some cases even responsible criminally to prosecution under the criminal statutes. This, not because he has given bond, but because he is a sworn officer of the law.

It was held in an old case, that of Jones v. Hoppie, 9 Mo. 173, l. c. 174, that a special deputy, appointed at the risk and request of a party, might be regarded as a deputy of a regular constable, but that is the only case we have found that has gone to the extent of holding him to be even an officer, and that was a very spe-

cial case, a case arising over a conflict between the constable and this special deputy, appointed by the justice, the latter having forestalled the regular constable in the levying of execution or other process on property against which the regular constable also held process. It is evident from a reading of the case, that the court considered the action of this special constable as in some sort a trick attempted to be played upon the constable, and to avoid the effect of the trick, the court held that the attachment of the property by the special was to be considered as an attachment by the regular constable. In that sense it used the expression that the special was to be regarded in that case "in a measure," as a deputy of the regular constable. That was under the law of this this state as it existed in 1835, and as we have seen, that law placed much more power in the hands of these specially appointed constables than the law has seen fit to do in the revision of 1865 and ever since that time. Hence we do not consider the case of Jones v. Hoppie, supra, as controlling or in harmony with our present law. It is to be noted that in all the cases in which it is held that the return of the officer is conclusive, even against attack in equity, the cases were those of regular officers or their duly appointed deputies. No case has so held when the person making the return was specially appointed by the justice "at the request and risk of plaintiff." In the light of the cases and of the ground upon which they rest, we hold that under our present statute and the construction given to it, this specially appointed process server is to be regarded, in making his return, not as an officer of the law, but as the agent of the party at whose instance and at whose risk, under the provisions of section 3863, he has been appointed. We are led to this conclusion also by another consideration and by reasoning on an analogous proposition. In the Smoot case, supra, in the opinions of Judge MARSHALL and of Judge Fox, which may be considered as following the same lines of argument, it is distinctly held, following Walker

v. Robbins, 14 Howard (U. S.) 584, and many other authorities, that equity will hold the return of the officer as conclusive upon the parties to the suit both in the same case and in equity, "except where the plaintiff has aided, abetted or knowingly taken advantage of the false return." It may be said that the court is unanimous on this point. Even the majority conceded that the return could be attacked in equity if shown to have been falsely and fraudulently made by the connivance or consent or procurement of plaintiff, while Judge VALLIANT held that it could be attacked in equity for its mere falsity. Undoubtedly, therefore, he would hold that if plaintiff was party to the procurement of the false return equity would overturn it.

The private person appointed under section 3863 to serve process, is regarded by the law, not as is an officer of the law, standing indifferent between the parties to the action, but as the agent, the representative *pro hac vice,* of the party at whose instance and risk he is appointed. That being so, and applying the principle announced in the decision in the Smoot case by all the judges, it must follow that if a suit in equity was instituted on a judgment which rested for its service on the return of a person appointed under the provisions of this section, the judgment would be open to attack for a false return of process if it appeared that the return was false, for the return being the act of the plaintiff's agent, if plaintiff is the one who had recovered the judgment, the plaintiff would be chargeable with whatever fraud or false statement or misstatement his agent, the special constable, had made. That being so, we see no reason why the court should drive the party into equity to vacate the return. If it is open to attack at all, there is no substantial reason why that attack cannot and should not be made direct by motion to quash the return when it is before the court in the very action. Applying this rule to the case in bar, we hold, as the learned trial judge undoubtedly

Stegall v. Pigment & Chemical Co.

held, that all of the various returns which were made by this so-called special constable, one appointed under section 3863, were open to impeachment and attack by motion to quash, and on the hearing of that motion are but prima facie evidence of the facts of service therein set out.

It does not follow from this because the return of the specially appointed constable is not conclusive, that it is not subject to amendment. It was distinctly held in the case of Mangold v. Dooley, 89 Mo. 111, l. c. 115, 1 S. W. 126, which was a case in which a garnishment in attachment was attempted to be served by special constable appointed under the provisions of what is now section 3863, that the objection made to the return of the service by the special constable so appointed, might be removed "by an amendment of the officer's return if the facts warranted it," provided the officer in question had power and authority to serve the process in question. It has been decided in a multitude of cases, that down to the rendition of judgment, and even afterwards, the courts have power to allow officers and even ex-officers, to amend their returns. Thus in the Smoot case, supra, at page 541, it is held that the trial court had power to permit the ex-sheriff to amend his return, which he did, even after he was not only out of office but after the case had been tried in the circuit court, appealed from that to the Supreme Court, there reversed and remanded to the circuit court and the amendment made in the circuit court after its remander. This renders the failure of plaintiff in error to save exception to the order of the court allowing the fourth amendment of the return a harmless oversight. If exceptions had been saved it would have been futile.

We therefore hold that the return of the special constable, appointed under the section 3863, is only prima facie evidence of the facts therein set out and is open to attack, on proper motion, and that it was

within the power of the court in which the case was pending, at any stage of the proceedings, to allow an amendment to the return so as to show the real facts, that the returns, as made by this special constable, were but prima facie evidence of those facts which under the law, any officer serving such process is required or authorized to make return thereof.

This brings us to a consideration of the proposition as to whether the returns made by this special constable are sufficient returns and correct in fact. It is very earnestly argued by the learned counsel for the plaintiff in error that the first return made by the special constable is so defective as to require no argument to demonstrate that fact, and that the fact that defendant had secured three amended returns to be made, establishes the proposition that the first and succeeding returns, down to the last, were erroneous. We do not agree that the first return was so insufficient as to be void. On an examination of that return which was made by the special constable in this case, it will appear that it states that it was served on Frank J. Diekmann. It stated in so many words, "that it was served on president of the within named defendant," said defendant corporation "having no business office in St. Louis at the time of the service." It is very evident from this that it was served on Diekmann, as president. The summons itself as well as all the returns clearly show that Diekmann was not proceeded against or summoned as an individual. This was all that the officer was required to certify in his return. All that section 3862, Revised Statutes 1899, required, so far as here relevant, is that the officer or person making the return shall state that the corporation defendant, it being a foreign corporation, has no office or place of business here, and that it was served on any agent or employee in any county or city where such service may be obtained. It is not even necessary for him to state in his return that the defendant was a foreign corporation. All that was

set out in the subsequent returns as to that is sur-
plusage and can be disregarded. See Newcomb v. New
York Cent. & H. R. R. Co. , 182 Mo. 687, l. c. 706; 81 S.
W. 1069. That service on the president of the defend-
ant was sufficient to bring the defendant into court be-
fore the justice in the first instance, and it did. The
fact that it was amended or, going further and admit-
ting that it might have been abandoned by these amend-
ments, does not overcome the fact that it accomplished
its purpose lawfully and did bring the defendant into
court. If the defendant had no notice by service on
Mr. Diekmann, it was open to it to remain away, let
judgment go and then attack the judgment if it was
sought to enforce it or if it stood as a judgment of
record against it. We say it could have done this, but
was not bound to do so. Very properly and without
sacrifice of any right, it appeared and moved to quash
the return of service. If process had not been served
on Mr. Diekmann, or if he was not the president of the
company at the time, or if the company had an office in
the city of St. Louis or no office at the time of service,
the return was open to attack by a motion to quash,
and open to the defendant to show that none of these
facts nor any one of them was true. That is all that a
motion to quash could properly reach. If the defendant
was a domestic corporation, it could set that up in the
motion to quash as a reason why the service and re-
turn were insufficient. But if the defendant, as it here
desired, intended to raise the proposition that it was a
foreign corporation transacting no business in Missouri
and therefore not subject to the jurisdiction of the courts
of this state, that was matter of defense to be raised,
not by motion to quash, but by plea in abatement, which,
as held in many of our recent decisions and as estab-
lished by authorities quoted by the learned counsel for
the plaintiff in error, could be joined with a plea to the
merits without waiving the matter in abatement. The
only proposition correctly before the court, either the

justice or the circuit court, on the motion to quash, was the question of whether or not the return or the fact of the service which the special constable made, was true in point of fact. We are, however, not resting our decision in this case on the technicality that the return was not correctly attacked. We are treating this as if the proper motion to quash, limited to the objects of such a motion, had been filed, and a plea in abatement also interposed, the defendant not pleading to the merits, not appearing to the case on the merits, thus give the defendant the utmost latitude of construction on the case made by its learned counsel. In this view of the case, the attacks made upon the subsequent returns are of minor consideration, but in order to treat the case fairly, we hold that each one of those subsequent returns, as finally amended, certainly was a sufficient return of the fact as to the party on whom the service was made; as to the fact that it was served on the president of the company, as such, and as to the fact that the company had no office at the time of service in the city of St. Louis. Notwithstanding the elaborate argument of counsel for plaintiff in error to that effect, we do not regard the insertion of the word "regular" in the third and fourth returns as in any way vitiating the returns. When the statute requires the return to be that the defendant has no office in this state, it certainly means an established office, that is to say, a regular office, not a mere casual place of meeting. It is common knowledge to all lawyers who have had any corporation business, and that includes almost the whole line of the profession, that time and again the boards of directors of their companies meet in the offices of their lawyers or of some officer of the company, and there transact business, and it is very common to head the minutes of the meeting at that place as if held at the office of the company, although the company may have a regular office in the very same town or city in which this meeting is held. No one has ever

suggested that that constituted the place in which the meeting happened to be held as an office for service within the meaning of our statute. The statute, when it requires a return of no office found in which to execute service, necessarily means an established office, that is to say a regular office, not a mere place where meetings are casually held, say at the office of the company's lawyer, or at the residence of some one of the officers or directors who may happen to be sick or unable to be present elsewhere at the time. That, at the time being, and *pro hac vice*, is an office of the company, but it is not its regular, not an established office. Assuming that we are wrong in this, it is to be said as to this word "regular" in the return, that the returns of constables and the like are not to be scrutinized with the technicality that is indulged in in testing the returns of sheriffs and higher officers. Thus it is said in Ruby v. Hann. & St. Jo. R. R. Co., 39 Mo. 480, that where the return on the execution was "not satisfied, there being no property found to levy the same on," was good, although the statute required the return to be "that the defendant had no goods or chattels whereof to levy the same." In Ables v. Webb, 186 Mo. 233, 1. c. 246, 85 S. W. 383, it is said that a return that complies with the spirit of the statute and is substantially in form, is good; that the returns of constables are not to be weighed too nicely. It is said in the case of Huhn v. Lang, 122 Mo. 600, 27 S. W. 345, that the powers and duties of constables within the jurisdiction of the justice are identical with those of a sheriff, and so with reference to this special constable, while his returns, as we hold are not as conclusive, his powers and duties in the service of process which he has power under the statute to make, are as broad as those of the constable himself or of a sheriff.

We hold then that it was proper matter to put in issue by a motion to quash as to whether this special constable had served the president of the company on

the day named, with the summons in the case, and if so, whether, at that time, the company defendant had no office in the city of St. Louis. These were issuable facts—these and these alone under the motion to quash. Independent of the question of the special constable's return as to these facts, the fact of its being a foreign corporation and having no office was admitted in the various motions and affidavits filed on behalf of the plaintiff in error, defendant below, and abundantly proven by the evidence. The evidence in the case on the trial of the motion to quash conclusively established the fact that the man on whom the special constable served the writ was, at the time, the president of the defendant company. So that every essential fact that was set out by the special constable in this case, necessary to confer jurisdiction on the justice and on the circuit court is established by the proof of the defendant itself, outside of the return of the special constable. The motions to quash the return of service of the summons, whether you count on the first, second, third or fourth return, were properly overruled.

There then remains but one other question in the case, namely, the question of whether the defendant, at the time of the institution of the action and service of the summons upon, was transacting business in this state, in the sense of our statute. The learned counsel for the plaintiff in error cite in support of the proposition that the court erred in holding that the defendant was doing business in this state within the meaning of our statute the cases of First Nat. Bank v. Leeper, 121 Mo. App. 688, 97 S. W. 636; Missouri Coal & Mining Co. v. Ladd, 160 Mo. 435, 61 S. W. 191; Hogan v. City of St. Louis, 176 Mo. 149, l. c. 157, 75 S. W. 604. We have given careful attention to these cases, and these are all the Missouri cases cited by counsel on this question, and have not thought it worth while to go outside of our state for the construction of our statutes on a matter so purely of local law and depend-

Stegall v. Pigment & Chemical Co.

ing so entirely upon the construction of our own stat-
ute. An examination of the cases referred to by the
counsel for the plaintiff in error fails to satisfy us that,
on the evidence adduced in this case, the defendant falls
within any of them.

We might be warranted in resting the determina-
tion of this question of fact, as it is, on the conclusion
of the learned trial judge, as the case was tried before
him without the intervention of a jury, but as counsel
for the plaintiff in error, defendant below, in an ex-
tensive brief and in an elaborate argument in support
of a motion for rehearing which they interposed and on
which we heard them in open court, are very strenuous
in their insistence that there is no evidence whatever to
sustain that finding and that it appears even affirma-
tively by the evidence that the defendant corporation
was not at the time when this action was commenced
actually engaged in business in this state within the
meaning of our law, we have concluded to go more fully
into detail in setting out the evidence which undoubt-
edly controlled the learned trial judge in finding that
the defendant was within our law and which satisfies
us that that conclusion was correct. Counsel argue
that the business for which the defendant was incorpor-
ated was the manufacture of pigment. That is true, but
outside of this mechanical work, the doing of which was
an object of the incorporation, is the fact that to do
this it had to do other acts that were just as much
corporate acts as was the manufacture of this pigment.
A corporation, an artificial body, cannot successfully
manufacture pigment or carry on any other work,
whether simple or complicated, except through its offi-
cers and agents, whose acts as such are part of the
business of the corporation. It is not only the physical
but the mental work of these officers and agents that
must be relied on for the successful direction of the
affairs of a corporation, and the exercise of these acts
by these officers and agents, is just as much part of the

operations of the corporation, part of the doing of business by the corporation, as is the mechanical or industrial work in which it is engaged. The evidence shows without question, that down to a very short period immediately before this suit was commenced the headquarters of this corporation were located in the city of St. Louis—here its officers met, its board of directors met, its supervising officers resided, and from here it is fair to assume that the mechanical as well as all other operations carried on at its works in Illinois or elsewhere had their direction. We hold that this is as much doing business and as much within the law as the mechanical part itself and that without this "brain work," so to speak, this direction of the controlling mind, there could be no successful conduct of the mechanical work. How near down to the time of the institution of the suit it is necessary that this work of direction should have been carried on in this state, to bring the corporation within the law, as a corporation doing business in this state, we are not prepared to say. Each case must turn on its own merits. It is very evident, however, that within a very short time prior to the institution of this suit this work of direction was carried on in this state, and that down to the time of the trial it still had important business in this state. That its board of directors had not met here after April 15, 1908, does not necessarily mean that the company did no business here thereafter. The funds of the corporation were kept here in bank down to the latter part of July, 1908; the check book was here; checks were made out here; contracts were made here; the very work here sued for by this plaintiff was contracted for in this city, and it was done in this city after the contract was made. All this was within the express charter power of the corporation, and could only be done, to be lawful, under its charter.

The defendant is an Arizona corporation. The articles of incorporation of the defendant are in evidence in the case, introduced by the defendant, and we find

that by the first of these articles it is provided that
the principal•place within the territory of Arizona in
which the business of the corporation is to be trans-
acted is Phoenix, "and the corporation may establish
branch offices either within or without the territory of
Arizona, where meetings of the board of directors may be
held." The second article provides for the general
nature of the business proposed to be transacted by the
corporation which is, among other things, first, to man-
ufacture pigments; third, to construct, lease, operate and
maintain any sort of chemical or kindred plant for treat-
ing ores; fourth, to make contracts, to purchase, own,
sell or otherwise dispose of any and all kinds of real
and personal property, mines and mining lands, mining
claims, leases, bonds and options; fifth, to buy, sell and
deal in patents; sixth, to buy, sell and deal in the
shares, interests, stocks and securities of other corpora-
tions, so far as the same may be of advantage or ger-
main to the general business of the corporation; sev-
enth, "in general, to do all things necessary or advanta-
geous to the proper conduct or benefit of the business
of this corporation in the territory and elsewhere, not
inconsistent with the laws of the United States and the
territory of Arizona." These articles of incorporation
appear to have been signed by all the incorporators in
the city of St. Louis. They were acknowledged in that
city before a notary public of the city of St. Louis by
four of the six directors, who were the president, vice-
president, secretary and treasurer of the corporation,
on the 13th of January, 1906, and these are the only in-
corporators who did acknowledge them, although two
other citizens of St. Louis, with these four, compose the
board and are named as incorporators. The articles
were recorded in Maricopa county, Arizona, with the
recorder, on the 16th of January, 1906, and were filed
in the office of the territorial auditor of the territory
of Arizona on the 16th of January, "at request of Stod-

150 App.—19

ard Incorporating Company, whose postoffice address is Phoenix, Arizona," as is certified to by the territorial auditor of Arizona. It does not appear that the board ever met in Arizona.

This present action, as before stated, was commenced in the justice's office, apparently on the 27th of June, 1908, at least that is the date upon which the summons issued. The account sued on is for service for eleven and a half months, beginning May 1, 1907, and ending April 15, 1908, so that only a little over two months before the institution of this suit, this defendant was undoubtedly having business transacted for it, services rendered to it, in St. Louis, Missouri, and down to that time, that is, April 15, 1908, its board of directors had been holding meetings in St. Louis. It was organized here. It had held all its meetings here prior to that time; it kept all of its books here; the latter part of July, 1908, it had its bank account and kept its money and drew the checks for that money in the city of St. Louis. It had papers and accounts on deposit in a deposit box in St. Louis, rented and used by it down to the trial. Great reliance is placed by the learned counsel for the plaintiff in error, defendant below, on the case of First National Bank v. Leeper, supra. Judge ELLISON, who delivered the opinion of the Kansas City Court in the case, at page 693, says that all agree that the corporation must be doing and transacting business for which it was incorporated and not merely what it might have authority to do and that there must be a doing of some of the work or an exercise of some of the functions for which the corporation was created to bring the case within the statute. Applying the law of that case, and it is practically in line with the other cases relied on but possibly the strongest case that plaintiff in error has cited, the reference which we have made to the articles of association very clearly shows that this corporation was doing some of the very business for which it was incorporated in St. Louis,

namely, making contracts and paying out its moneys, and from St. Louis directing all corporate operations. It is specifically authorized by its charter to carry on any of the business connected with its organization or work anywhere in the United States. Considering the testimony in this case then, as to what this defendant below, plaintiff in error, was actually doing, down to within a very short time of the institution of this suit, some of it after action brought, we hold that there was evidence before the learned trial court authorizing it to find that the corporation defendant was a foreign corporation, transacting business in this state and liable to be served as such by service upon any of its officers, the evidence being very clear that at the time of the service it had no office or place of business in this city or in this state. We do not think that it is within the spirit of our law to allow business to be done here, debts contracted, service to be performed here, from the very inception of the corporation down to a very few weeks before suit and then allow the corporation to shift out of our jurisdiction, leaving debts here contracted unpaid and their establishment in our courts impossible.

The motion for rehearing is denied and the opinion as here written is substituted for that heretofore filed. The judgment of affirmance heretofore rendered will remain as the judgment of this court, all concurring.