MARY I. ABLES, Appellant, v. THOMAS WEBB
and LEONARD MERCANTILE & REALTY
COMPANY.

**Division One, February 15, 1905.**

1. **EJECTMENT: Broken Possession.**  Although plaintiff's cause
of action in ejectment may have accrued fifteen years before
suit brought, yet that fact becomes immaterial if there was no
such open, actual, unbroken adverse possession as created title
in defendant by limitation.

2. **EXECUTION: Residence of Defendant: Collateral Attack.**  A
sale of land on execution issued by a circuit clerk on a justice's
transcript cannot be collaterally attacked (as by ejectment) on
the ground that the precedent execution issued by the justice
had been directed to a constable of a township other than that
in which the execution-defendant resided.

3. ——: **Premature Return.**  A constable's return of an execu-
tion, premature by one day, cannot be collaterally attacked,
that is, in a suit where the interests of third parties are in-
volved.

4. ——: ——: **Sufficient Return Nulla Bona.**  If a constable's
return complies with the spirit of, and is substantially in the
form prescribed by, the statute, it is sufficient.  In a suit in
ejectment against persons who claim as assignees of the pur-
chaser at the sale under the execution issued by the circuit
clerk, the return of the constable which in language substan-
tially recites no property found is sufficient to sustain a trans-
cript of the justice's judgment and the issue of execution by the
circuit clerk and sale by the sheriff, and to defeat judgment
for the plaintiff in ejectment who claims as purchaser from
the execution-defendant.  In this case the constable's return
recited: "no other property found on which to levy this writ."
*Held*, sufficient *nulla bona* return to support transcript, etc.

Appeal from Jasper Circuit Court.—*Hon. Jos. D.
Perkins*, Judge.

AFFIRMED.

*Thomas & Hackney* for appellant.

(1)  The judgment in favor of W. A. Moter
against Thos. F. Phillips, John Ables and others in the

common pleas court of Jasper county, dated January 5, 1877, became and was a lien on all the interest of the judgment defendants in the real estate in controversy, and continued a lien for a period of three years from date, and was a subsisting lien on the property at the date of the execution by Phillips of the deed of trust to Wilson, trustee for Martha E. Clark, filed for record June 25, 1877, and an execution having been issued on said judgment, within the three years, to-wit, on May 30, 1878, and the land sold to plaintiff on October 7, 1878, the title acquired by plaintiff under such purchase is superior to the title acquired by defendants under the foreclosure sale of the deed of trust aforesaid. Wherever a valid lien is in existence, its foreclosure wipes out of existence all title subsequent in date to it. Durrett v. Hulse, 67 Mo. 201; Meier v. Meier, 105 Mo. 428; Huff v. Morton, 94 Mo. 410; Hicks v. Ellis, 65 Mo. 176; Stewart v. Severance, 43 Mo. 322; Wood v. Messerly, 46 Mo. 255; Slatterly v. Jones, 96 Mo. 225. (2) The defendants, as well as W. A. Moter, are estopped from claiming that Moter obtained any title to the real estate in controversy by his purchase for $7.50 at the sheriff's sale under execution in his favor on January 14, 1878. After having bid in this property under a levy on all right, title and interest of Phillips, he caused a second execution to be issued against the same parties on the same judgment, and caused the sheriff to levy on the undivided one-half interest in the land in controversy as the property of Phillips and Ables, and caused the same to be advertised and sold by the sheriff, at which sale Mary I. Ables, the plaintiff, purchased the property for the sum of $83.31, after which, the sheriff's deed was duly delivered to her and recorded. Moter, the plaintiff in that action, then filed his motion in court to receive and did receive the proceeds of the last-named sale. This deed, and the record on which

it is based, forever preclude and estop Moter, and those claiming under him, from setting up title acquired from the same source and held by Moter at the time of the last-named purchase, and they are precluded from denying that Phillips and Ables were the owners of the undivided one-half interest in the property at the time of the sale by the sheriff to the plaintiff. Gilkerson v. Knight, 71 Mo. 406; Field v Langsdorf, 43 Mo. 32; Rice v. Bunce, 49 Mo. 231; Austin v. Loring, 63 Mo. 22; Guffey v. O'Reiley, 88 Mo. 418. (3) The sheriff's deed to James P. Betts, in case of Cohn v. Moter, conveyed no title. The transcript execution issued by the circuit court clerk on the transcript judgment in said cause was issued without authority and is void for these reasons: First. Because W. A. Moter was a resident of Union township and the execution issued by the justice was directed to the constable of Marion township instead of Union township. Second. The return of the constable on this execution to Marion township was premature. The execution was issued January 12, 1877, returnable in sixty days, and was returned on the fifty-ninth day, March 12, 1877. Third. The return of the constable on the execution issued by the justice is not sufficient to constitute a *nulla bona* return. Sec. 14, 2 Wag. Stat., now sec. 4019, R. S. 1899. Until an execution has been issued by the justice, directed to the township where defendant resides, and until the execution so issued has remained in the hands of the constable for the life of the execution, and until the execution thus issued has been at the proper time returned by the officer that the defendant had no goods or chattels whereof to levy the same, an execution issued by the circuit clerk is absolutely void and not simply voidable, and a sale thereunder passes no title. Langford v. Few, 146 Mo. 142; Reed v. Lowe, 163 Mo. 519. (4) The plaintiff's title is a legal and not an equitable title. The plaintiff claims title directly from Phillips and Ables. She does

not claim title through Moter. By virtue of the estoppel invoked by the plaintiff against Moter and the defendants, the defendants are precluded from setting up title under Moter and precluded from asserting that Moter ever acquired any title whatever to the undivided half interest in the land in controversy in this suit by virtue of the first sheriff's sale. If, as a necessary link in the plaintiff's chain, she was compelled to admit that the legal title at any time became vested in Moter, and if she then sought to divest Moter of title by virtue of an estoppel, there would be ground for contending that her title was an equitable and not a legal one, and that she must first resort to a court of equity and cause the legal title to be divested out of Moter before she could maintain ejectment. But in this case, if effect is given to this estoppel, there is no occasion nor necessity for plaintiff to resort to a proceeding in equity to divest Moter of title. Such action on plaintiff's part would be inconsistent with the very estoppel invoked. It would be in effect admitting away half of the estoppel. Giving full effect to the estoppel, Moter and the defendants are precluded from setting up the first sale for any purpose until full effect and operation is given to the sheriff's deed to plaintiff. They are precluded from asserting that the first sheriff's deed was valid to convey to Moter any title inconsistent with the title acquired by plaintiff under the second sheriff's sale; hence, are precluded from denying that the second sheriff's sale, under which the plaintiff purchased, passed to her the better title to the undivided one-half interest claimed. Courts of law take cognizance of many estoppels and, on a title supported by an estoppel of the character invoked in this case, an action of ejectment may be maintained. Stoddard v. Chambers, 2 How. (U. S.) 317; Harvey v. Carlisle, 23 Ala. 635. Plaintiff's title is based on the judgment, sale under execution, and sheriff's deed conveying to her the one-half interest.

The defense is that the execution creditor had previously sold and bought the same title. To this defense the estoppel is offered. The estoppel is thus used defensively, not as a creation of title. Allen v. Sales, 56 Mo. 37.

*Paul F. Coste, O. D. Royse* and *Howard Gray* for respondents.

(1) The deed of the sheriff of January 16, 1878, conveyed to W. A. Moter the legal title to the land in controversy, and whether or not the sheriff's deed under the execution based on the judgment of the justice conveyed the Moter title to the grantors of defendant, the plaintiff has never acquired the legal title of Moter and, therefore, cannot recover. Hunt v. Selleck, 118 Mo. 588; Ford v. French, 72 Mo. 250; Dunlap v. Henry, 76 Mo. 106; King & Co. v. Seivers, 43 Mo. 519; Clay v. Mayr, 144 Mo. 376; Turner v. Baker, 64 Mo. 218. (2) The sheriff's deed having placed the legal title in W. A. Moter, appellant bases her right to recover on the theory that Moter and his assigns are estopped from claiming under that deed because he afterwards had the property sold again on the same judgment. Ejectment cannot be maintained upon a title acquired by estoppel. Turner v. Baker, 64 Mo. 218; Allen v. Sales, 56 Mo. 28; Hays v. Levingston, 34 Mich. 384; Nix v. Collins, 65 Ga. 219; Percival v. Platt, 36 Ark. 456; Suttle v. Railroad, 76 Va. 284; Winters v. White, 70 Md. 305; McCleod v. Bishop (Ala.), 20 So. 130; Stone v. Perkins, 85 Fed. 616; Walker v. Keynote, 32 Iowa 524; Roundtree v. Little, 54 Ill. 323; Foster v. Mora, 98 U. S. 425; VanKirk L. & Construction Co. v. Green, 31 So. 484; Betz v. Mullen, 62 Ala. 365. It is true in this State that defendant in ejectment can file answer setting up an equitable defense, as our statute expressly permits it. Sec. 605, R. S. 1899; Chouteau v. Gibson, 76 Mo. 38. (3) Before appellant can success-

fully invoke the principle of estoppel, she must show that she was induced by the acts and conduct of W. A. Moter to buy the premises in controversy, and that she would not have done so but for such conduct, and she must also show that she has been injured by his conduct.  Blodgett v. Perry, 97 Mo. 263; Bramell v. Adams, 146 Mo. 70; Bales v. Perry, 51 Mo. 449; Spurlock v. Sproule, 72 Mo. 503; Acton v. Dooley, 74 Mo. 63; Noble v. Blount, 77 Mo. 235; State ex rel. v. Branch, 151 Mo. 622; Kelly v. Hendricks, 57 Ala. 193.    (4) The justice judgment was rendered January 12, 1877, the execution returnable in sixty days, as the law directed, and was returned on the fifty-ninth day, or March 12, 1877.  It seems that the constable lost sight of the fact that February only had twenty-eight days. Everything else being regular, as the record in this case shows, the sheriff's deed passed the title.  Whitman v. Taylor & Caldwell Co., 60 Mo. 127; Pullis v. Pullis, 157 Mo. 592; Waddell v. Williams, 50 Mo. 221; Sachse v. Clingingsmith, 97 Mo. 406.    (5)  The return of the constable is: "no other  property  found upon which to levy this writ."  This is sufficient, as the law only requires that the return express to a reasonable certainty that the officer did what the law asks of him.   State ex rel. v. Still, 11 Mo. App. 282; Franse v. Owens, 25 Mo. 329.

LAMM, J.—This is a suit in ejectment to recover of Webb, tenant, and the Leonard Mercantile and Realty Company, his landlord, the southwest quarter of section 23, township 28, range 32, lying in Jasper county, Missouri, on a petition in common form, laying the ouster at an unnamed day in 1894. The answer was a general denial.

At the trial it was admitted the defendants were in possession; that the plaintiff had been ousted; that plaintiff, if entitled to recover, could recover only an undivided half interest in the land; that defendants

denied her cotenancy, and that plaintiff's husband had been dead fifteen years when she instituted her suit.

Though plaintiff had been discovert for fifteen years, and though her cause of action, if any, accrued under a sheriff's deed executed on October 10, 1878, yet as there was no such actual, open, unbroken and adverse possession in defendants and those under whom they held as to create a title by mere flux of time, the testimony on that branch of the case becomes immaterial.

Plaintiff, to show legal title and present possessory right in her, put in evidence the following duly recorded muniments of title:

1.   A patent from the United States to David E. Moter, dated in 1873.

2.   A warranty deed from said Moter to John Ables and Thomas F. Phillips, dated in 1875.

3.   A deed from Beamer, sheriff of Jasper county to plaintiff, dated October 10, 1878, reciting that one W. A. Moter recovered judgment in the common pleas court of Jasper county on the fifth day of January, 1877, against Thomas F. Phillips, John Ables and A. B. Parkell for $35.70 and costs, on which execution issued on May 30, 1878, levy made on September 10, 1878, seizing the right, title and interest of said Phillips and Ables in lots 1, 2, 3 and 4 in Regans' addition to the city of Carthage, and also an undivided half interest in the real estate sued for, a sale, made in bulk on October 7, 1878, to plaintiff as the highest bidder for $83.31, and a conveyance of the estate of Ables and Phillips in all said real estate to plaintiff. (This title deed will be hereinafter referred to as conveyance "A" for convenience of identification.)

Plaintiff then rested.

Defendants put in evidence the following duly recorded title papers to show legal title and present possessory right in them:

1. A deed from said Beamer as sheriff, dated January 16, 1878, reciting the same judgment referred to in conveyance "A," the issue of execution on October 23, 1877, a levy as of October 26, 1877, on the right, title and interest of the judgment defendant, Thos. F. Phillips, in the real estate in question, together with his interest in certain lots in Holman's, in Bulgin's and in Elizabeth James' additions to the city of Carthage, a sale made in bulk to the judgment creditor, W. A. Moter, as the highest bidder, for $7.50, and the conveyance of the estate of said Thomas F. Phillips in all said real estate to said W. A. Moter. (For convenience this deed will be hereinafter referred to as conveyance "B.")

2. A deed from said Beamer, sheriff, to one James P. Betts, dated September 18, 1878, reciting that three Cohns recovered judgment against W. A. Moter before one Tuttle, a justice of the peace of Marion township, Jasper county, for $28.45, on January 12, 1877, that a transcript was filed in the office of the circuit clerk of said county on February 2, 1877, an execution issued from said office on August 7, 1878, a levy as of August 17, seizing the interest of said Moter in the real estate sued for, a sale made on September 16, 1878, to James P. Betts, as the highest bidder, for $8.50, and a conveyance of the estate of said Moter in said land to said Betts. (For convenience this deed will be hereinafter referred to as "C.")

3. A deed from said Betts to one Hall conveying whatever title he acquired under "C," of date August 4, 1879.

4. A deed from John Ables to Thomas F. Phillips conveying his undivided half of the real estate in suit, under date of December 21, 1876.

5. A deed of trust from Thomas F. Phillips, dated June 1, 1877, conveying the said real estate to Wilson, trustee for Clark, and securing money loaned. (Hereinafter referred to as conveyance "D.")

6. A trustee's deed, reciting the foreclosure of "D," executed by Thomas, successor to Wilson, trustee, dated September 14, 1878, and conveying the land to said Hall.

7. A deed for the same premises from said Hall on August 28, 1893, to the Homestead Land Company, and a deed from said company to the defendant company dated October 25, 1898.

To fortify the sheriff's deed evidenced by "C," the defendants introduced the following:

8. The transcript of Tuttle, justice of the peace, filed as aforesaid, showing a judgment in due form on proper service in favor of the said Cohns against W. A. Moter, and narrating, *inter alia*, that an execution had issued thereon from the justice court on January 12, 1877, returnable in sixty days.

9. The execution itself directed to the constable of Marion township, Jasper county, dated January 12, 1877.

10. The return dated March 12, 1877, indorsed on said execution by said constable, which return set forth a garnishment of John Ables and Frank Phillips, and concludes thus: "by returning this writ no other property found upon which to levy this writ."

11. And further introduced the summons to said garnishees, dated January 12, 1877, commanding them to appear January 18, 1877, before said justice of the peace and answer interrogatories, with the return thereon showing service.

12. Defendants also introduced oral testimony tending to show that nothing was paid on the justice execution.

In rebuttal, plaintiff introduced oral testimony tending to show that W. A. Moter, on the date of the justice execution in *Cohn et al. v. Moter,* and thereafter, resided in *Union* township, Jasper county, instead of *Marion* township; also the written answer of John

Ables, as garnishee, admitting for himself and his co-garnishee, Phillips, an indebtedness to Moter on a blank date in 1877 in the sum of $35, which answer was sworn to at a date obliterated, and also introduced record evidence establishing the fact that Moter came into the said common pleas court on December 7, 1878, and filed his motion to have the proceeds of the sale under which plaintiff bought by conveyance "A," paid over to him by the sheriff, and procured an order and got the proceeds.

Defendants prayed no instructions. The plaintiff prayed three: one, a peremptory declaration in her favor; another in effect asking the court to declare the law to be that if Moter was a resident of Union township instead of Marion township from January 12, 1877, to September 16, 1877 (covering the life of the said justice execution and beyond), then the execution issued by the circuit clerk on the transcript judgment, under which Betts bought, was void and conveyance "C" fell with it; and another, in effect, asking the court to declare the law to be that if Moter bought under the first execution issued on his judgment against Phillips, Ables and Parkell, and received a sheriff's deed "B," and afterward caused a second execution to issue and the undivided half interest of the real estate in dispute to be levied on and sold as the property of the execution defendants, and plaintiff bought at the sale and received conveyance "A" and Moter accepted the proceeds of her bid, then Moter was estopped from denying that plaintiff by such purchase acquired the undivided one-half interest in the property so purchased by her at sheriff's sale, and asserting that plaintiff, as against Moter, became the owner of such interest.

The court refused to so declare the law, plaintiff excepting, and followed its refusal with a judgment for defendants, and plaintiff appeals.

Conveyance "C" being allowed in evidence over

the timely objection of appellant and exception saved, appellant renews here her assault on that conveyance, contending that (1) the justice execution was directed to the constable of the wrong township, that (2) it is prematurely returned, and that (3) the return thereon was not sufficient to constitute a return of *nulla bona* and, *ergo,* the transcript execution from the circuit clerk's office under which Betts bought was improvidently sued out and void, thereby making Betts's deed worthless.

If conveyance "C" falls under such attack, there would be left an outstanding title in W. A Moter, acquired by conveyance "B," which must be reckoned with, and which, undisposed of, would defeat appellant, who must recover, if at all, on the strength of her own and not on the weakness of respondents' title. To surmount this admitted obstacle appellant invokes the doctrine of equitable estoppel and contends that her third instruction should have been given.

On the foregoing facts and questions presented here, can the judgment below, palpably sound on the broad justice of the case at bar, be sustained on the ground of strict legal right? In our opinion it can be, because:

I. Observing the dates of the several deeds, it will be seen the record title was in Phillips when he borrowed, on June 1, 1877, the money secured by the foreclosed trust deed "D," subject, however, to the lurking menace of the live judgment lien in favor of Moter for $35.70 in the case of Moter v. Phillips, Ables and Parkell, in the common pleas court, of date of January 5, 1877; and it is shown by the record that Phillips's then title passed to defendant company by foreclosure sale, and mesne conveyances. It will be seen further, that if conveyance "C" be a valid conveyance, then the title acquired by Moter in enforcing his judgment lien by sale and conveyance to him

by conveyance "B," passed to Betts through "C" and to defendant company through mesne conveyances, so that the branch of the title split off by the first sale under the Moter judgment has again become grafted on the title acquired by foreclosing the deed of trust "D," and the full title is in defendant company.

The statute in force at the time of issuing the transcript execution in hand, by the circuit clerk, was section 14, art. 7, chap. 82, Wag. Stat. 1870 (now sec. 4019, R. S. 1899) and containing this proviso: "but no execution shall be sued out of the court where the transcript is filed, if the defendant is a resident of the county, until an execution shall have been issued by the justice, directed to the constable of the township in which the defendant resides, if there be one in such township, and, if not, to any constable in the county, and returned that the defendant had no goods or chattels whereof to levy the same."

A direct attack on a title under a sale, on an execution issued by a circuit clerk on a justice transcript, where the precedent justice execution is claimed to have been directed to the wrong constable, is one thing; a collateral attack is quite another thing, and this court has set its face against such collateral attacks as furnishing a mischievously inviting and easy method of unsettling land titles.

In Waddell v. Williams, 50 Mo. l. c. 222, BLISS, J., said: "The purchaser at sheriff's sale is bound to know that the execution is sustained by a judgment, and by such a judgment as still authorizes its issue. No execution can issue to a sheriff upon a justice judgment unless a previous one has been issued to the proper constable and returned *nulla bona,* and a transcript has been filed. The purchaser then will examine the transcript and certificates, and may inspect the justice's records and files, and in doing so will not be likely to find anything to show the actual residence of the execution defendant. Neither the summons

. . . nor the execution . . . show such residence, and he will only see the summons was served, the judgment rendered, and the execution properly issued and returned. He has a right to presume that the defendant lived within the justice's jurisdiction, and may safely purchase. If the proceedings have not been regular, those interested may attack them directly and show *aliunde* facts—as that the constable was not an officer of the township where the defendant resided—that should set aside the proceedings. But if the party supposed to be injured sleeps, strangers can not step in.''

The Waddell case has been followed and is now a rule of property in Missouri. [Pullis v. Pullis, 157 Mo. l. c. 592.] We therefore rule against appellant's assignment of error, based on the refusal of her second instruction.

II. The justice execution was returnable in 60 days, but was returned in 59 days (its life being from January 12, 1877, to March 12, 1877). Did this vice in calculation make the subsequent transcript execution void and overthrow the sheriff's deed ''C?'' This question is not *res integra* in Missouri. The precise point was passed on and held adversely to appellant's contention in Whitman v. Taylor, 60 Mo. 127. The Whitman case was never overruled, and where the interest of third parties are involved, the doctrine there announced to the effect that such irregularity is not a weapon of collateral attack, remains the law. That no legal principle relating to land titles should be changed except on the best of reasons, is a proposition standing the test of every-day wisdom and is a beneficent axiom of real estate law. [Littlefield v Ramsey, 181 Mo. l. c. 620]. We rule this point also against appellant.

III. Was there sufficient return of *nulla bona* on the justice execution? The garnishment proceedings resulted in nothing. They seem to be yet held *sub ju-*

*dice,* though a generation has passed. The record has earmarks from which we infer that the garnishee, "Frank" Phillips, was none other than Thomas F. Phillips, and that he and his cogarnishee, John Ables, were none other than the judgment debtors in the judgment in favor of Moter in the common pleas court, and that the thirty-five dollars Ables referred to in his answer as due by him and Phillips to Moter were the same thirty-five dollars and odd cents of indebtedness merged in Moter's judgment, and collected from them with costs by his two executions referred to in conveyances "A" and "B," but whether this be so, or not so, the fact remains that the garnishment proceedings bore no fruit and were abandoned before the return of the execution. Hence, in final analysis, the reference to them in the constable's return is without value in determining the pivotal question of the sufficiency of the return as a return of *nulla bona.* These constable returns must not be weighed as with a goldsmith's scales, or viewed under a too powerful judicial microscope, or construed with sour and over-nice precision and narrowness. The courts should hold up to them the candle of common sense and interpret them with blandness and liberality to support titles long acquiesced in. If such returns comply with the spirit of the statute and are substantially in form, they are well enough. [Franse v. Owens, 25 Mo. 329; Ruby v. Railroad, 39 Mo. 480; Littlefield v. Ramsey, 181 Mo. 613; State ex rel. v. Still, 11 Mo. App. l. c. 285.] The return in this case: "and by returning this writ no other property found upon which to levy the writ," is practically a return of *nulla bona* (the word "other" referring to the garnishment and being without a significance under this record), and the return, judged of by its four corners, showing with reasonable certainty there was no property found whereof to levy the writ.

From these views, it results that conveyance "C"

was a valid conveyance and was properly admitted in evidence.

IV.   It is contended by respondents that even if conveyance "C" be rejected, there remains an outstanding title in Moter under conveyance "B" and hence appellant can not recover.   To meet this contention, appellant insists that the title of Moter under "B" inures to her benefit under "A" on the doctrine of equitable estoppel.   In answer to this contention, respondents assert that in ejectment the plaintiff must prove a *legal* title in order to recover, and that an equitable estate will not be sufficient.   In reply, appellant contends that where, as here, the estoppel is used by the plaintiff *defensively* and not to create a title, such defensive use is allowed in the strict legal action of ejectment.

It is good law that plaintiff must proceed in equity to enforce his equitable rights, and will not be allowed to recover in ejectment on a mere equitable title. [Turner v. Baker, 64 Mo. 218; Clay v. Mayr, 144 Mo. 376; Kingman & Co. v. Sievers, 143 Mo. 519; Turner v. Dixon, 150 Mo. l. c. 422; Nalle v. Thompson, 173 Mo. l. c. 614.]

It has been said, however, that such condition of things may arise in the trial of an ejectment suit that plaintiff may use equitable estoppel to avoid the force of, or preclude defendant from the benefit of, a given conveyance.   [Allen v. Sales, 56 Mo. l. c. 37; Suddarth v. Robertson, 118 Mo. l. c. 295; Tyler v. Hall, 106 Mo. 313.]

We shall decline to enter the inviting field of judicial exploration presented by the use of the doctrine of estoppel in an action of ejectment where the petition is in common form and the answer a general denial, and where the decisions are, at first blush, somewhat inharmonious.   Because it is self-evident that if conveyance "C" is a valid conveyance, as we have just held, then all questions of equitable estoppel on one

hand, and recovery on an equitable title, on the other, become purely academic questions in the case. No one would assert that if Moter got a title on January 16, 1878, under "B" (which stands admitted) and lost it to Betts on September 14, 1878, under "C," as we hold, he could *thereafter* estop Betts by accepting the proceeds of the second sale in December, 1878, or by causing a second levy on the same land as the land of another, under which plaintiff acquired title, if at all, on October 10, 1878. Betts was no party to the second levy. He was no party to the motion and order of court under which Moter got the proceeds of plaintiff's bid. He had no day in court, and he and those holding through him are not bound by the second levy, sale and deed.

Appellant's third instruction was rightly refused, and so was her first. The judgment is affirmed.

All concur.