(No. 11665.—Decree affirmed.)
RALPH DEMPSEY, Appellee, *vs.* FRANK S. BURNS, Appellant.

*Opinion filed December 19, 1917.*

1. CLOUD ON TITLE—*what necessary in order that possession be sufficient to give notice.* Possession of land to be sufficient to give notice must be of that open and visible character which from its nature is calculated to apprise the world that the land is occupied and who the occupant is, and the fencing in, with smooth wire, of a tract 50 by 100 feet in one corner of a quarter section is not sufficient to constitute possession of the whole quarter.

2. SAME—*conveyance of easement for drainage ditch is not a lease under which grantor can claim possession by tenant.* A defendant to a suit to quiet title who has conveyed an easement in a portion of the disputed land to a drainage district for a ditch can not claim possession of the land through the possession of the drainage district on the theory that the district is his tenant.

3. SAME—*adverse possession of portion of disputed land will not prevent color-of-title claimant reducing remainder to possession.* Where a party has a deed for a tract of land, actual possession of a part will, in law, constitute possession of all of the tract not in the adverse possession of another, and the fact that a drainage district is in adverse possession of a strip of the disputed land used for a drainage ditch will not prevent the color-of-title claimant from reducing the remainder of the tract to possession.

4. SAME—*fencing of land by lessee is sufficient act of possession to give notice.* The fact that the color-of-title claimant, before fil-

ing his bill to quiet title and as soon as he had purchased the land, leased the same and that his lessee went immediately upon the land and fenced it constitutes notice of possession sufficient to entitle the claimant to maintain his bill.

5. SAME—*claimant need not fence strip occupied by drainage ditch to make his possession sufficient.* In reducing the disputed land to possession by fencing, the color-of-title claimant is not required to exclude, by fencing, a strip occupied by a drainage ditch which runs through the land, as the law does not require a drainage district to fence its right of way, and it is sufficient if the fence around the entire tract includes the strip so occupied.

6. SAME—*when right of claimant is not affected by sale for delinquent assessment.* The right of a color-of-title claimant is not affected by a sale of the land for a delinquent drainage assessment which took place before he acquired his title and after the parties under whom he claims had completed the seven years' payment of taxes under a tax deed, where the claimant, as soon as he acquired his title, redeemed the land, thereby destroying the possibility of the sale ever culminating in a deed.

7. EVIDENCE—*witness as to pedigree cannot testify as to mere statement of fact by person still living.* The facts involved in a question of pedigree may be established by proof of general reputation in the family or by proof of what deceased members of the family may have said, but they cannot be established by the testimony of a witness to a statement of fact by a person still living.

8. PLEADING—*when failure to file a replication cannot be taken advantage of.* The failure to file a replication cannot be taken advantage of after the taking of proof and a determination of the issues raised on the bill and answer, but under such circumstances the issues will be treated as having been regularly joined.

APPEAL from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

KEITHLEY & KEITHLEY, for appellant.

STEVENS, MILLER & ELLIOTT, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Ralph Dempsey, appellee, filed his bill in the circuit court of Peoria county to quiet title to 160 acres of overflow land located in the bottoms along the Illinois river. Appellant, Frank S. Burns, was the only one of the defend-

ants in the bill to interpose any defense. The cause was
referred to the master to take the proof and report the
same, together with his findings. He reported finding the
facts as alleged in the bill and recommending that the re-
lief prayed be granted. Exceptions to the master's report
were overruled and a decree was entered in accordance with
the prayer of the bill.

During the progress of the hearing the bill was amended
by excluding a strip through the quarter section which was
in the possession of the Banner Special Drainage and Levee
District under a quit-claim deed from appellant. The bill
alleged that this quarter section of land had been patented
by the United States government to Daniel Sturtevant on
November 29, 1817, and that it did not appear of record
that he had ever conveyed the same. Appellee claimed title
as a remote grantee of Wallace Matthews, to whom a tax
deed had been issued by the county clerk of Peoria county
in 1881. The proof disclosed that Matthews and his gran-
tees paid all the taxes on this land for the years from 1880
to 1894 and for the years from 1897 to 1915, inclusive.
The deed to appellee was dated August 18, 1916, and con-
veyed the entire quarter section for the consideration of
$500. Prior to his purchase of the land appellee had ex-
amined the record title and knew that appellant had con-
veyed to the Banner Special Drainage and Levee District,
on June 20, 1913, a right of way 100 feet wide through the
premises, and also knew that the district had taken pos-
session of this strip of land and had constructed a ditch
thereon across the land. Appellee paid the taxes on the
premises for 1916, and he also paid drainage assessments
amounting to approximately $1300 after he acquired his
color of title. On August 18, 1916, the day he purchased
the land, he leased the same by a written lease to Joseph A.
Davis, who owned the quarter section adjoining it on the
west. Davis, on behalf of appellee, immediately constructed
a wire fence along the north, east and south sides of the

land, and at the northwest corner connected it with a fence on his own land. There was no ·fence along the east half of the south side of the Davis land. The fence erected for appellee on the south side of the premises therefore did not connect with any fence on the Davis land but came up to his land. Davis did a small amount of clearing on this land prior to the filing of the bill.

Appellant claims to be the holder of the paramount title as a remote grantee of certain of the heirs-at-law of Daniel Sturtevant, and also claims to have taken possession of the tract in 1914. Prior to that time it is conceded the land was vacant and unoccupied. In October of that year he enclosed a small space, 50 by 100 feet, out of the northwest corner of this tract by stringing two smooth wires around the same and fastening them to trees. No opening was left into the portion of the tract so enclosed. According to the testimony of appellant this fence, as he designated it, was still intact in the spring of 1915. Davis testifies that when he took possession of the tract as the tenant of appellee, in 1916, these wires had been broken, presumably by the ice, and the broken ends were lying upon the ground.

Appellant first contends that he was the holder of the paramount title and had reduced the premises to possession before the entry of appellee, and that this was sufficient to defeat appellee's right to the relief sought. It is true that every presumption will be indulged in favor of the holder of the paramount title and against the holder of color of title, and if the holder of the paramount title acquires possession before the claimant under a tax deed, such holder will be protected in his possession. Appellant was the remote grantee of a number of persons who he claims were collateral heirs of Daniel Sturtevant. In order to connect this conveyance with the title held by Sturtevant the deposition of Mrs. Margaret Blake, of Plymouth, Massachusetts, was taken, who testified that she was eighty years old, and that her grandfather, Simeon Sturtevant, was a brother of

Daniel Sturtevant. Her testimony is sufficient to identify some of the remote grantors of appellant as the collateral kindred of Daniel Sturtevant, but is not sufficient to show that Daniel Sturtevant left no children nor direct descendants and that his property descended to collateral kindred. She only knew from statements made to her by Helen Sturtevant, a cousin, who was then living in the State of Massachusetts, that Daniel Sturtevant had never been married. These statements were made after appellant had made inquiry of Mrs. Blake and her cousin as to the family history. She did not pretend to have learned this fact from any statement made to her by any deceased members of her family or as a matter of family tradition. She merely states that the only information she has she secured from her cousin, and also from the fact that no wife had been buried beside Daniel Sturtevant in the cemetery at Halifax, Massachusetts. The facts involved in a question of pedigree may be established by proof of general reputation in the family or by proof of what deceased members of the family may have said, but they cannot be established by the testimony of a witness to the mere statement of a fact by a person still living. (*Harland* v. *Eastman,* 107 Ill. 535.) Appellant failed to show that he was the holder of the paramount title.

In any event, and indulging all the presumptions which appellant contends should be indulged in his favor, the decree entered was in accord with the proof. The master found that appellant had never been in possession of the premises, and the court approved that finding and entered a decree quieting appellee's title and removing, among others, the deeds to appellant as clouds upon the title. Notice of the possession of real estate, to be sufficient, must be of that open and visible character which from its nature is calculated to apprise the world that the land is occupied and who the occupant is. Such possession, if calculated to give notice of the fact, is all that the law requires. (*Truesdale*

v. *Ford,* 37 Ill. 210; *Towle* v. *Quante,* 246 id. 568.) The
pretended possession of appellant was not of this character.
At the time appellant enclosed the small lot in the north-
west corner of the tract by fastening two smooth wires to
a number of trees growing there, this land was vacant and
unoccupied and was submerged the greater part, if not all,
of each year. There was no apparent use to which it could
be put and no apparent object to be accomplished by en-
closing this small lot in this manner. The enclosure was
not of such a character as would put anyone on notice that
possession had been taken of this parcel or of the tract of
which it was a part. This did not constitute such possession
as is required to give notice.

Appellant contends that the conveyance to the drainage
district was, in effect, a lease of that portion of the land
conveyed to the district, and that the possession of the dis-
trict holding under him was the possession of appellant. By
this instrument appellant conveyed and quit-claimed to the
drainage district "the perpetual easement and right of way
for the construction, maintenance, building and repairing of
ditch No. 1, as shown by the map of Banner Special Drain-
age and Levee District in the counties of Peoria and Ful-
ton, in the State of Illinois, filed in the county court of
Peoria county July 15, 1912, so far as the same extends
across the north-east quarter of section 6, town 6, north,
range 6, east of the fourth principal meridian, in the county
of Peoria and State of Illinois." The instrument also con-
tained the following provisions: "This conveyance being
made to said grantees as a right of way for said ditch, which
is not to exceed 100 feet in width across said premises, but
only so much of said width is to be used in the construc-
tion of said ditch and placing the waste banks as shall be
absolutely necessary for said ditch purposes. The said
grantor hereby expressly reserves to himself, his heirs and
assigns, the exclusive right at all times hereafter to enter
upon, use and occupy and enjoy the said strip of ground

for hunting and fishing purposes, and for all other uses and purposes, of every kind and character, which will not and do not interfere with or impair the use and occupation thereof by the grantees as a ditch and levee for drainage purposes." This instrument is not a lease, as appellant contends. It is the conveyance of an easement or right of way across the premises, based upon whatever right or title appellant had, and the district went into possession under this deed. It did not hold this strip for appellant and its possession was not the possession of appellant.

It is also contended that after excluding the tract conveyed to the drainage district by the amendment to the bill appellee was not entitled to the relief sought for the reason that the tract is indivisible, and anything that injuriously affects appellee's rights to any part of it *ipso facto* destroys his right to the whole of it; that the conditions required to convert appellee's color of title into the actual title must exist as to every portion of the land described in the deed which constitutes his color of title, and that appellee's deed being for the whole quarter section, his entry thereunder must be as broad as his deed. The drainage district was in possession only of the 100-foot strip conveyed to it. That fact did not prevent appellee from reducing the remainder of the tract to possession. When a party has a deed for a tract of land, actual possession of a part will, in law, constitute possession of all of the tract not in the adverse possession of another. (*Whitford* v. *Drexel,* 118 Ill. 600; *Fisher* v. *Bennehoff,* 121 id. 426.) Appellant suggests no reason, and we know of none, why appellee does not have the right to have his title quieted to a portion, only, of the premises if he so desires.

It is contended that appellee did not reduce the premises to possession prior to the filing of his bill. The bill alleges that prior to August 18, 1916, the land was vacant and unoccupied and that on that day he entered into possession of the same. The testimony discloses that on the day he pur-

chased the land appellee leased the same to Davis by written lease, and Davis immediately went upon the land and erected the fences already referred to. This was such an act of possession as constituted the notice required and was sufficient to entitle appellee to maintain his bill.

It is also suggested that the inclusion of the 100-foot strip then in the possession of the drainage district within the enclosure made by appellee rendered his possession insufficient. The law does not require a drainage district to fence its right of way, and appellee was not required to exclude this strip in making his enclosure. The drainage district was organized to reclaim and drain the land within its boundaries, and it is a matter of common knowledge that it is customary to construct the ditches of such districts through the lands benefited without fencing the right of way or otherwise separating it from the lands of private owners. The enclosure of this tract by appellee was similar in this respect to the enclosure of tracts ordinarily made by owners of land in drainage districts.

Before appellee had acquired his title, but after his grantors had completed the payment of taxes for seven years under their color of title, he, acting as agent for others, purchased the land at a tax sale for a delinquent drainage assessment. After he had purchased from the grantees of Matthews on August 18, 1916, he redeemed the land from this tax sale, and it is contended that by thus allowing the land to go to sale for a delinquent drainage assessment before entry, the color-of-title claimant forfeited his right to complete his title by taking possession of the property, and that the entry of appellee under his claim of color of title was unavailing. The seven years' payment of taxes had been completed before the land was sold for the delinquent assessment, and that sale did not act as an interruption of such payments. The redemption by appellee destroyed the possibility of the sale ever culminating in a

deed. The right of appellee to perfect his title by entry was not affected by this sale and redemption.

Appellant contends further that the decree should not have been entered because of the condition of the pleadings. Appellee had procured the appointment of a guardian *ad litem* for such of the unknown defendants as may have been minors or suffering from disabilities. The bill did not allege, and it did not appear from the proof, that there were any minors or persons suffering from disability whose rights were in any way involved. The guardian *ad litem* answered the original bill but filed no answer to the bill as amended. Appellant is not in a position to raise any question as to this situation as he was in nowise affected thereby. Appellee failed to file a new replication after the order allowing the answer of appellant to the original bill to stand as his answer to the bill as amended. The failure to file a replication cannot be taken advantage of after the taking of proof and a determination of the issues raised on the bill and answer. We have repeatedly held that under such circumstances the issues will be treated as having been regularly joined.

Finding no error in the record the decree of the circuit court is affirmed.                     *Decree affirmed.*