## Marengo Cave Co. *v.* Ross.

[No. 26,942. Filed November 5, 1937.]

*Luckett & Luckett* and *Bulleit & Bulleit,* for appellant.

*Conner D. Ross* and *H. W. Mock,* for appellee.

ROLL, J.—Appellee and appellant were the owners of adjoining land in Crawford County, Indiana. On appellant's land was located the opening to a subterranean cavity known as "Marengo Cave." This cave extended under a considerable portion of appellant's land and the southeastern portion thereof extended under lands owned by appellee. This action arose out of a dispute as to the ownership of that part of the cave that extended under appellee's land. Appellant was claiming title to all the cave and cavities including that portion underlying appellee's land. Appellee instituted this action to quiet his title as against appellant's claim. Appellant answered by a general denial and filed a cross-complaint wherein he sought to quiet its title to all the cave including that portion underlying appellee's land. There was a trial by jury which returned a verdict for the appellee. Appellant filed its motion for a new trial which was overruled by the court, and this is the only

error assigned on appeal. Appellant assigns as grounds for a new trial that the verdict of the jury is not sustained by sufficient evidence, and is contrary to law. These are the only grounds urged for a reversal of this cause.

The facts as shown by the record are substantially as follows: In 1883 one Stewart owned the real estate now owned by appellant, and in September of that year some young people who were upon that land discovered what afterwards proved to be the entrance to the cavern since known as Marengo Cave, this entrance being approximately 700 feet from the boundary line between the lands now owned by appellant and appellee, and the only entrance to said cave. Within a week after discovery of the cave, it was explored, and the fact of its existence received wide publicity through newspaper articles and otherwise. Shortly thereafter the then owner of the real estate upon which the entrance was located, took complete possession of the entire cave as now occupied by appellant and used for exhibition purposes, and began to charge an admission fee to those who desired to enter and view the cave, and to exclude therefrom those who were unwilling to' pay for admission. This practice continued from 1883, except in some few instances when persons were permitted by the persons claiming to own said cave to enter same without payment of the usual required fee, and during the following years the successive owners of the land upon which the entrance to the cave was located, advertised the existence of said cave through newspapers, magazines, posters, and otherwise, in order to attract visitors thereto; also made improvements within the cave, including the building of concrete walks, and concrete steps where there was a difference in elevation of said cavern, widened and heightened portions of passage-ways; had available and furnished guides, all in order

to make the cave more easily accessible to visitors desiring to view the same; and continuously, during all this time, without asking or obtaining consent from anyone, but claiming a right so to do, held and possessed said subterranean passages constituting said cave, excluding therefrom the "whole world" except such persons as entered after paying admission for the privilege of so doing, or by permission.

Appellee has lived in the vicinity of said cave since 1903, and purchased the real estate which he now owns in 1908. He first visited the cave in 1895, paying an admission fee for the privilege, and has visited said cave several times since. He has never, at any time, occupied or been in possession of any of the subterranean passages or cavities of which the cave consists, and the possession and use of the cave by those who have done so has never interfered with his use and enjoyment of the lands owned by him. For a period of approximately twenty-five years prior to the time appellee purchased his land, and for a period of twenty-one years afterwards, exclusive possession of the cave has been held by appellant, its immediate and remote grantors.

The cave, as such, has never been listed for taxation separately from the real estate wherein it is located, and the owners of the respective tracts of land have paid the taxes assessed against said tracts.

A part of said cave at the time of its discovery and exploration extended beneath real estate now owned by appellee, but this fact was not ascertained until the year 1932, when the boundary line between the respective tracts through the cave was established by means of a survey made by a civil engineer pursuant to an order of court entered in this cause. Previous to this survey neither of the parties to this appeal, nor any of their predecessors in title, knew that any part of the

cave was in fact beneath the surface of a portion of the land now owned by appellee. Possession of the cave was taken and held by appellant's remote and immediate grantors, improvements made, and control exercised, with the belief on the part of such grantors that the entire cave as it was explored and held, was under the surface of lands owned by them. There is no evidence of the dispute as to ownership of the cave, or any portion thereof, prior to the time when in 1929 appellee requested a survey, which was approximately forty-six years after discovery of the cave and the exercise of complete dominion thereover by appellant and its predecessors in title.[1]

It is appellant's contention that it has a fee simple title to all of the cave. That it owns that part underlying appellee's land by adverse possession. Section 2-602 Burns Rev. St. 1933, §61 Baldwin's 1934, provides as follows:

> "The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterward: . . . Sixth. Upon contracts in writing other than those for the payment of money, on judgments of courts of record, and for the recovery of the possession of real estate, within twenty (20) years."

It will be noted that appellee nor his predecessors in title had never effected a severance of the cave from the surface estate. Therefore the title of the appellee extends from the surface to the center, but actual possession is confined to the surface. Appellee and his immediate and remote grantors have been in possession of the land and estate here in question at all times, unless it can be said that the possession of the cave by appellant as shown by the evidence above set out, has met all the requirements of the law relating to

1. The above facts are quoted from Appellate Court's opinion. See 7 N. E. (2d) 59.

the acquisition of land by adverse possession. A record title may be defeated by adverse possession. All the authorities agree that before the owner of the legal title can be deprived of his land by another's possession, through the operation of the statute of limitation, the possession must have been actual, visible, notorious, exclusive, under claim of ownership and hostile to the owner of the legal title and to the world at large (except only the government) and continuous for the full period prescribed by the statute. The rule is not always stated in exactly the same words in the many cases dealing with the subject of adverse possession, yet the rule is so thoroughly settled that there is no doubt as to what elements are essential to establish a title by adverse possession. *Cravens* v. *Cravens* (1913), 181 Ind. 553, 103 N. E. 333; *Rennert* v. *Shirk* (1904), 163 Ind. 542, 72 N. E. 546; *Vandalia R. Co.* v. *Wheeler* (1914), 181 Ind. 424, 103 N. E. 1069; *Tolley* v. *Thomas* (1910), 46 Ind. App. 559, 93 N. E. 181; *McBeth* v. *Wetnight* (1914), 57 Ind. App. 47, 106 N. E. 407. Let us examine the various elements that are essential to establish title by adverse possession and apply them to the facts that are established by the undisputed facts in this case.

(1) The possession must be actual. It must be conceded that appellant, in the operation of the "Marengo Cave," used not only the cavern under its own land but also that part of the cavern that underlaid appellee's land, and assumed dominion over all of it. Yet it must also be conceded that during all of the time appellee was in constructive possession, as the only constructive possession known to the law is that which inheres in the legal title and with which the owner of that title is always endowed. *Morrison* v. *Kelly* (1859), 22 Ill. 610; *Cook* v. *Clinton* (1887), 64 Mich. 309, 31 N. W. 317; *Ables* v. *Webb* (1905), 186 Mo. 233, 85 S. W. 383; 1 R. C. L. 692; 2 C. J. 51, *et seq.* and author-

ities there cited. Whether the possession was actual under the peculiar facts in this case we need not decide.

(2) The possession must be visible. The owner of land who, having notice of the fact that it is occupied by another who is claiming dominion over it, nevertheless stands by during the entire statutory period and makes no effort to eject the claimant or otherwise protect his title, ought not to be permitted, for reasons of public policy, thereafter to maintain an action for the recovery of his land. But, the authorities assert, in order that the possession of the occupying claimant may constitute notice in law, it must be visible and open to the common observer so that the owner or his agent on visiting the premises might readily see that the owner's rights are being invaded. *Holcroft* v. *Hunter* (1832), 3 Blackf. 147; *Towle* v. *Quante* (1910), 246 Ill. 568, 92 N. E. 967; *Tinker* v. *Bessel* (1912), 213 Mass. 74, 99 N. E. 946; *Jasperson* v. *Scharnikow* (1907), 150 Fed. 571, 80 C. C. A. 373, 15 L. R. A. (N. S.) 1178 and note. What constitutes open and visible possession has been stated in general terms, thus: it is necessary and sufficient if its nature and character is such as is calculated to apprise the world that the land is occupied and who the occupant is. *Dempsey* v. *Burns* (1912), 281 Ill. 644, 118 N. E. 193; and such an appropriation of the land by claimant as to appraise, or convey visible notice to the community or neighborhood in which it is situated that it is in his exclusive use and enjoyment. *Goodrich* v. *Mortimer* (1919), 44 Cal. App. 576, 186 Pac. 844. It has been declared that the disseisor "must unfurl his flag" on the land, and "keep it flying," so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest. *Robin* v. *Brown* (1932), 308 Pa. 123, 162 Atl. 161, 168; *Willamette Real Estate Co.* v. *Hendrix* (1895), 28 Ore. 485, 42 Pac.

514; *Peoples Savings Bank* v. *Bufford* (1916), 90 Wash. 204, 155 Pac. 1068; Amer. Juris. Vol. 1, p. 865.

(3) The possession must be open and notorious. The mere possession of the land is not enough. It is knowledge, either actual or imputed, of the possession of his lands by another, claiming to own them bona fide and openly, that affects the legal owner thereof. Where there has been no actual notice, it is necessary to show that the possession of the disseisor was so open, notorious and visible as to warrant the inference that the owner must, or should have known of it. In *Philbin* v. *Carr* (1921), 75 Ind. App. 560, 584, 129 N. E. 19, it was said:

> "However, in order that the possession of the occupying claimant may constitute notice, it must be visible and open to the common observer so that the owner or his agent on visiting the premises might readily see the owner's rights are being invaded. In accordance with the general rule applicable to the subject of constructive notice, before possession can operate as such notice it must be clear and unequivocal."

*Holcroft* v. *Hunter* (1832), 3 Blackf. 147; *Towle* v. *Quante, supra.* And again, the possession must be notorious. It must be so conspicuous that it is generally known and talked of by the public. "It must be manifest to the community." Thus, the Appellate Court said in *Philbin* v. *Carr, supra,* that (p. 584) :

> "Where the persons who have passed frequently over and along the premises have been unable to see any evidence of occupancy, evidently the possession has not been of the character required by the rule. The purpose of this requirement is to support the principle that a legal title will not be extinguished on flimsy and uncertain evidence. Hence, where there has been no actual notice, the possession must have been so notorious as to warrant the inference that the owner ought to have known that a stranger was asserting dominion over his land.

Insidious, disultory, and fugitive acts will not serve that purpose. To have that effect the possession should be clear and satisfactory, not doubtful and equivocal." See cases there cited on p. 585.

(4) The possession must be exclusive. It is evident that two or more persons cannot hold one tract of land adversely to each other at the same time. "It is essential that the possession of one who claims adversely must be of such an exclusive character that it will operate as an ouster of the owner of the legal title; because, in the absence of ouster the legal title draws to itself the constructive possession of the land. A possession which does not amount to an ouster or disseisor is not sufficient." *Philbin* v. *Carr, supra.* See cases cited on p. 585.

The facts as set out above show that appellee and his predecessors in title have been in actual and continuous possession of his real estate since the cave was discovered in 1883. At no time were they aware that anyone was trespassing upon their land. No one was claiming to be in possession of appellee's land. It is true that appellant was asserting possession of the "Marengo Cave." There would seem to be quite a difference in making claim to the "Marengo Cave," and making claim to a portion of appellee's land, even though a portion of the cave extended under appellee's land, when this latter fact was unknown to anyone. The evidence on both sides of this case is to the effect that the "Marengo Cave" was thought to be altogether under the land owned by appellant, and this erroneous supposition was not revealed until a survey was made at the request of appellee and ordered by the court in this case. It seems to us that the following excerpt from *Lewey* v. *H. C. Fricke Coke Co.* (1895), 166 Pa. 536, 31 Atl. 261, is peculiarly applicable to the situation here

presented, inasmuch as we are dealing with an underground cavity. It was stated in the above case (pp. 545-547) :

"The title of the plaintiff extends from the surface to the center, but actual possession is confined to the surface. Upon the surface he must be held to know all that the most careful observation by himself and his employees could reveal, unless his ignorance is induced by the fraudulent conduct of the wrongdoer. But in the coal veins deep down in the earth he cannot see. Neither in person nor by his servants nor employees can he expore their recesses in search for an intruder. If an adjoining owner goes beyond his own boundaries in the course of his mining operations the owner on whom he enters has no means of knowledge within his reach. Nothing short of an accurate survey of the interior of his neighbor's mines would enable him to ascertain the fact. This would require the services of a competent mining engineer and his assistants, inside the mines of another, which he would have no right to insist upon. To require an owner under such circumstances to take notice of a trespass upon his underlying coal at the time it takes place is to require an impossibility; and to hold that the statute begins to run at the date of the trespass is in most cases to take away the remedy of the injured party before he can know that an injury has been done him. A result so absurd and so unjust ought not to be possible. . . .

"The reason for the distinction exists in the nature of things. The owner of land may be present by himself or his servants on the surface of his possessions no matter how extensive they may be. He is for this reason held to be constructively present wherever his title extends. He cannot be present in the interior of the earth. No amount of vigilance will enable him to detect the approach of a trespasser who may be working his way through the coal seams underlying adjoining lands. His senses cannot inform him of the encroachment by such trespasser upon the coal that is hidden in the rocks under his feet. He cannot reasonably be held to be constructively present where his presence is in the nature of things impossible. He must learn of such a trespass by other means than such as are

within his own control, and until these come within his reach he is necessarily ignorant of his loss. He cannot reasonably be required to act until knowledge that action is needed is possible to him."

We are not persuaded that this case falls within the rule of mistaken boundary as announced in *Rennert* v. *Shirk* (1904), 163 Ind. 542, 551, 72 N. E. 546, wherein this court said:

.·"Appellant insists, however, that if one takes and holds possession of real estate under a mistake as to where the true boundary line is, such possession can not ripen into a title. In this State, when an owner of land, by mistake as to the boundary line of his land, takes actual, visible, and exclusive possession of another's land and holds it as his own continuously for the statutory period of twenty years, he thereby acquires the title as against the real owner. The possession is regarded as adverse, without reference to the fact that it is based on mistake; it being *prima facie* sufficient that actual, visible, and exclusive possession is taken under a claim of right."

The reason for the above rule is obvious. Under such circumstances appellant was in possession of the necessary means of ascertaining the true boundary line, and to hold that a mere misapprehension on the part of appellant as to the true boundary line would nullify the well established law on adverse possession. In that case appellee had actual, visible, notorious and exclusive possession. The facts in the present case are far different. Here the possession of appellant was not visible. No one could see below the earth's surface and determine that appellant was trespassing upon appellee's lands. This fact could not be determined by going into the cave. Only by a survey could this fact be made known. The same undisputed facts clearly show that appellant's possession was not notorious. Not even appellant itself nor any of its remote grantors knew that any part of the "Marengo Cave" extended beyond its own boun-

daries, and they at no time, even down to the time appellee instituted this action, made any claim to appellee's lands. Appellee and his predecessors in title at all times have been in possession of the land which he is now claiming. No severance by deed or written instrument was ever made to the cave, from the surface. In the absence of a separate estate could appellant be in the exclusive possession of the cave that underlies appellee's land?

"If there is no severance an entry upon the surface will extend downward and draw to it a title to the underlying minerals; so that he who disseizes another and acquires title by the statute of limitation will succeed to the estate of him upon whose possession he has entered." *Pres. & Mgrs. of the Delaware & Hudson Canal Company* v. *Hughes et al.* (1897), 183 Pa. St. 66, 73, 38 Atl. 568, 63 Am. St. Rep. 743.

Even though it could be said that appellant's possession has been actual, exclusive and continuous all these years, we would still be of the opinion that appellee has not lost his land. It has been the uniform rule in equity that the statute of limitation does not begin to run until the injured party discovers, or with reasonable diligence might have discovered, the facts constituting the injury and cause of action. Until then the owner cannot know that his possession has been invaded. Until he has knowledge, or ought to have such knowledge, he is not called upon to act, for he does not know that action in the premises is necessary and the law does not require absurd or impossible things of anyone. *Lewey* v. *Frick Coal Co.* (1895), 166 Pa. St. 536, 31 Atl. 261; *Delaware, etc., Canal Co.* v. *Hughes, supra.*

In the case of *Bailey* v. *Glover* (1874), 88 U. S. 342, pp. 348-349, the court said:

"We also think that in suits in equity the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains

in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party. . . .

"To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

In *Livingston* v. *Rawyards* (1880), L. R. 5 App. Cas. 34, Lord Hatherly treats an underground trespass as a species of fraud. While there is no active fraud shown in this case, yet the facts come clearly within the case of *Lightner Mining Co.* v. *Lane* (1911), 161 Cal. 689, 120 Pac. 771, and cases cited on page 776. The following excerpt from this opinion clearly sets forth our view (p. 700):

"In the English decisions the willful and secret taking of coal from a neighbor's mine is usually characterized as fraudulent. (*Hilton* v. *Woods*, L. R. 4 Eq. Cas. 440; *Dean* v. *Thwaite*, 21 Beav. 623; *Ecclesiastical Coms.* v. *North E. Ry. Co.*, L. R. 4, Ch. Div. 860; *Trotter* v. *McLean*, L. R. 13, Ch. Div. 586.) Such an act, so committed, has all the substantial elements of fraud. Where one by misrepresentation induces another knowingly to part with his property, because his mind is so beclouded by the falsehood that he is unaware of the wrong done him, it is called a fraud. It is a taking of another's property without his knowledge of the fact that it is really taken from him. The ignorance in that case is produced by artifice. Where one betrays a trust and appropriates trust property to his own use, it is called a fraud. The injured party allows the other to have the possession and the opportunity to convert the property secretly, because of faith and confidence in the wrongdoer. In the case of underground mining of a neighbor's ore, nature has supplied the situation which gives the oppor-

tunity to the trespasser to take it secretly and causes the ignorance of the owner. Relying upon his ignorance, he takes an unfair advantage of his natural opportunities, and thereby clandestinely appropriates another's property while appearing to be making only a lawful use of his own. The act in its very nature constitutes the deceit which makes it a fraud."

So in the case at bar, appellant pretended to use the "Marengo Cave" as his property and all the time he was committing a trespass upon appellee's land. After twenty years of secret user, he now urges the statute of limitation, Section 2-602 Burns St. 1933, §61 Baldwin's 1934, as a bar to appellee's action. Appellee did not know of the trespass of appellant, and had no reasonable means of discovering the fact. It is true that appellant took no active measures to prevent the discovery, except to deny appellee the right to enter the cave for the purpose of making a survey, and disclaiming any use of appellee's lands, but nature furnished the concealment, or where the wrong conceals itself. It amounts to the taking of another's property without his knowledge of the fact that it is really being taken from him. In most cases the ignorance is produced by artifice. But in this case nature has supplied the situation which gives the trespasser the opportunity to occupy the recesses on appellee's land and caused the ignorance of appellee which he now seeks to avail himself. We cannot assent to the doctrine that would enable one to trespass upon another's property through a subterranean passage and under such circumstances that the owner does not know, or by the exercise of reasonable care could not know, of such secret occupancy, for twenty years or more and by so doing obtained a fee simple title as against the holder of the legal title. The fact that appellee had knowledge that appellant was claiming to be the owner of the "Marengo Cave," and

advertised it to the general public, was no knowledge to him that it was in possession of appellee's land or any part of it. We are of the opinion that appellant's possession for twenty years or more of that part of "Marengo Cave," underlying appellee's land, was not open, notorious, or exclusive, as required by the law applicable to obtaining title to land by adverse possession.

We cannot say that the evidence is not sufficient to support the verdict or that the verdict is contrary to law.

Judgment affirmed.